**COLLINS COMPANY, LTD.,**
**Plaintiff–Appellant,**

v.

**CARBOLINE COMPANY, Pureco Systems, Inc., d/b/a Flexible Roof Contractors, and David G. Dearlove, Defendants–Appellees.**

No. 87–1563.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1987.
Decided Jan. 11, 1988.

---

James A. Clark, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff-appellant.

Robert J. Kopka, Landau, Omahana & Kopka, Ltd., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

This diversity action arises out of losses sustained by plaintiff Collins Company, Ltd. in 1985 when leaks developed in its warehouse roof manufactured, installed, supplied, and inspected by defendants. These leaks spread throughout the warehouse, causing Collins to expend both time and money in making repairs as well as to suffer delay in its use of the warehouse as a showroom. The district court granted defendant Carboline Company's motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), and Collins appeals.

Collins, incorporated under the laws of North Dakota and having its principal place of business in New Jersey, owns a commercial warehouse in Elk Grove Village, Illinois. Defendant Carboline, a Delaware corporation with its principal place of business in Missouri, is a manufacturer and supplier of roofing products including the Ethylene Propylene Diene Monomer ("EPDM") roofing system. Defendant Flexible Roof Contractors, a wholly owned division of defendant Pureco, an Illinois corporation with its principal place of business there, is a commercial roofing contractor specializing in the repair and installation of roofs. Defendant David G. Dearlove, an Illinois resident, is an architect who inspects commercial real estate properties for buyers to determine the condition and suitability for sale of these properties. Dearlove informs buyers of any defective conditions he finds. Collins and Carboline, however, are the only two relevant parties for purposes of this appeal, which involved Count I of Collins' complaint.

The Chicago Title and Trust Company and Wachovia Bank and Trust Company owned the commercial warehouse in March 1981 when they arranged for the installation of an EPDM roofing system manufactured by Carboline. Carboline issued an express warranty to the owners against leakage for ten years.[1] Flexible installed the roof, and Carboline inspected and subsequently accepted it on March 19, 1981.

In the spring of 1984, Chicago Title and Wachovia agreed to sell the warehouse to Collins. Collins retained Dearlove to inspect the premises for defects, and he reported that "[i]n general, we found the building to be in good shape" and that "[t]he roofing and related flashings, expansion joint, etc., looked in good shape." Collins then acquired the building in June. (Pl.Ex. B).

Commencing in May 1985, leaks developed in the roofing system and ultimately spread throughout the warehouse and showroom portions of the premises. Col-

---

1. The warranty stated:
   Carboline Company does hereby warrant the Carboline EPDM roofing system installed at the above-named project location, subject to the terms, limitations and conditions set forth below, against leakage for a period of ten years from the date of completion.
   (Pl.Br. at 4). Under the section of the warranty entitled "Terms, Limitations, and Conditions," however, the warranty explicitly provided that:

2. Carboline shall not be liable for any damage to the substrata (including deck and insulation), the structure itself, to the contents of the structure, injury to persons, or *for consequential or incidental damages whether in contract* or tort, including negligence.
   *Id.* (Emphasis added).

lins allegedly has had to spend much time and money inspecting and repairing the roof. It also has not been able to use its showroom fully to display its merchandise.

On February 28, 1986, Chicago Title and Wachovia assigned Collins their rights under the Carboline warranty. The assignment provided:

> Any and all of Assignors' rights, privileges, causes of action and interest of any kind whatsoever under the [Carboline] warranty along with any and all of Assignors' rights, privileges, causes of action and interest of any kind whatsoever under any other warranty, express or implied, oral or written, of Carboline and Pureco to Assignors relating to the Premises, as well as any claim, cause of action or right of any kind whatsoever, in tort or in contract, that Assignors have against Carboline relating to the Premises.

(Pl.Br. at 4). In exchange for their assignment of rights and causes of action to Collins, Chicago Title and Wachovia received a covenant not to sue from Collins.

Collins brought this diversity suit in federal district court on March 6, 1986, alleging a breach of express warranty against Carboline, negligent installation against Flexible, and negligent inspection and misrepresentation against Dearlove. Collins attempted to recover $500,000 damages on a breach of warranty for both economic loss and consequential damages even though it was not a party to the original warranty agreement. The district court found that under Illinois law privity was required to enforce an express warranty seeking economic loss notwithstanding the general contract rule providing for free assignability of contract rights. Since the court concluded there was no privity between Carboline and Collins, Carboline's motion for judgment on the pleadings was granted. Subsequently it entered final judgment against Collins under Fed.R.Civ. P. 54(b) so that we have jurisdiction of the appeal.

The issue presented on this appeal is whether Carboline's express warranty against roof leakage extended to Collins, a subsequent purchaser of the warehouse and a contractual assignee of Chicago Title and Wachovia's right to sue on the warranty. As a federal court sitting in diversity jurisdiction, this Court must accord substantial deference to Judge Norgle's interpretation of Illinois law as well as try to predict how the Illinois Supreme Court would resolve the case. *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986). Federal courts of course can sometimes make incorrect predictions as to undecided questions of state law. Compare *Enis v. Continental Illinois Nat'l Bank*, 795 F.2d 39, 42 (7th Cir.1986) (under Illinois law, an employee manual does not create enforceable contract rights in at-will employment relationship) with *Duldulao v. St. Mary of Nazareth Hosp.*, 115 Ill.2d 482, 488, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987) (disagreeing with reasoning in *Enis* and holding contra).

■ As noted by the district court, both parties' arguments are equally straightforward. Carboline gave an express warranty on the roof to the owners of the premises, Chicago Title and Wachovia. It did not warrant the product to subsequent purchasers even though it could have. Under Illinois law, a party without a warranty assignment must be in privity of contract to enforce an express warranty alleging economic loss. See *R. & L. Grain Co. v. Chicago Eastern Corp.*, 531 F.Supp. 201, 208 (N.D.Ill.1981) (applying Illinois law); *Spiegel v. Sharp Elec. Corp.*, 125 Ill.App. 3d 897, 81 Ill.Dec. 238, 466 N.E.2d 1040 (1st Dist.1984). Original privity appears to remain a requirement only in cases of economic loss in contrast to the removal of this stricture in personal injury claims. See, *e.g.*, *Whitaker v. Lian Feng Machine Co.*, 156 Ill.App.3d 316, 108 Ill.Dec. 895, 509 N.E.2d 591 (1st Dist.1987) (action by purchaser's injured employee against seller of bandsaw for breach of implied warranties not barred by lack of privity).

In accepting Carboline's assertions, the district court reviewed the Illinois Supreme Court's recent opinion in *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 104 Ill.Dec. 898, 503 N.E.2d 760 (1987). In *Szajna*, the

court declined to abolish the privity requirement in implied warranty economic loss cases and held that "[t]he line of demarcation between nonprivity and privity is best left at the point defined in *Moorman* [*Manufacturing Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 79, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)] between economic loss and noneconomic loss." *Id.* Applying *Szajna,* the district court felt that there was no reason to think that the Illinois Supreme Court would abandon the privity requirement as to the express warranty between Carboline and Chicago Title and Wachovia. The court impliedly rejected the notion that by virtue of the assignment Collins was in privity with Carboline.

The district court's holding, however, runs directly against Collins' persuasive claim regarding liberal assignment of warranty rights under Illinois law. See Ill. Rev.Stat. ch. 26, § 2–210(2) (1985). Collins, recognizing that legal doctrines encouraging assignment are based on "policies of free alienability of commercial contracts," *Sally Beauty Co. v. Nexxus Products Co.,* 801 F.2d 1001, 1006 (7th Cir.1986), argues that as an assignee, by acquiring the same rights as its assignors, Chicago Title and Wachovia, it now "stands in the same shoes of the assignor." *Matter of Estate of Martinek,* 140 Ill.App.3d 621, 629–630, 94 Ill. Dec. 939, 488 N.E.2d 1332, 1337–1338 (2d Dist.1986) (citations omitted).

Chicago Title and Wachovia's warranty assignment gave Collins the right to sue for defective roofing materials. Because this assignment did not materially increase Carboline's risk, Collins contends the warranty was freely assignable and should be enforced. Collins demonstrates the support of several authorities in its application of the law of assignments. See Restatement (Second) of Contracts § 317(2); 4 *Corbin on Contracts* 412 (1951); 8 Williston, *Law of Contracts* 727 (3d ed. 1964).

Instead of deciding this mesh of novel issues and potentially expanding Illinois law regarding recovery of economic loss in the absence of original contractual privity, cf. *Affiliated FM Ins. Co. v. Trane Co.,* 831 F.2d 153, 155 (7th Cir.1987) (refusing to expand Wisconsin products liability law); *Wisconsin Power and Light Co. v. Westinghouse Electric Corp.,* 830 F.2d 1405, 1409 (7th Cir.1987) (same), this Court chooses to avoid uncertainty and potential conflict by certifying to the Illinois Supreme Court this unsettled question of state law. It is too conjectural to infer that the Illinois Supreme Court would apply *Szajna* to this case. Cf. *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.,* 833 F.2d 633 (7th Cir.1987). While the United States Supreme Court has ruled that the certification procedure can be used in a diversity case that raises no constitutional issues, *Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), this Court is fully aware that the procedure has engendered some debate.[2] Nevertheless, we have resorted to this helpful procedure when controlling state law is unclear.

The certification route is not always taken by this Court when it lacks guidance from a state to determine the appropriate law to apply. Compare *Country Mutual Ins. Co. v. Duncan,* 794 F.2d 1211, 1215 (7th Cir.1986) ("law in Illinois regarding preclusive effects of guilty pleas in civil actions is fairly clear") with *Palace Entertainment, Inc. v. Bituminous Cas. Corp.,* 793 F.2d 842, 846 n. 3 (7th Cir.1986) (law in Indiana on burden of proof for fraud is not sufficiently unsettled to justify certification) and *Schaefer v. Heckler,* 792 F.2d 81, 84 n. 3 (7th Cir.1986) (issue of determining posthumous paternity can be resolved by reference to Wisconsin statutory and case law). However, we have used this procedure even when not requested by the parties. See, *e.g., Citizens for John W. Moore*

---

**2.** See generally C. Seron, Certifying Questions of State Law: Experience of Federal Judges (Federal Judicial Center 1983); Brown, *Certification—Federalism in Action,* 7 Cum.L.Rev. 455 (1977); McKusick, *Certification: A Procedure for Cooperation Between State and Federal*

*Courts,* 16 M.L.Rev. 33 (1964); Mattis, *Certification of Questions of State Law: An Impractical Tool in the Hands of the Federal Courts,* 23 U.Miami L.Rev. 717 (1969); Roth, *Certified Questions from the Federal Courts: Review and Re-proposal,* 34 U.Miami L.Rev. 1 (1979).

*v. Bd. of Elec. Com'rs,* 781 F.2d 581, 583 (7th Cir.1986).

Rule 20 of the Illinois Supreme Court Rules (adopted August 30, 1983) allows certification of a question of Illinois law to the Illinois Supreme Court when the question is determinative of the case and there is no clear controlling Illinois Supreme Court precedent. We have found no case that would hold that by virtue of the assignment Collins was in privity with Carboline. Our research has also failed to reveal controlling precedent by any Illinois court on the question of whether in the absence of original contractual privity an express warranty extends to a contractual assignee the original party's right to sue for purely economic loss and consequential damages. Accordingly, as provided for by Rule 20 of the Illinois Supreme Court Rules, this Court respectfully requests the Supreme Court of Illinois to provide us with instructions concerning the following question of law which may be determinative in this case:

■ In the absence of original contractual privity, does an express warranty extend to an assignee's right to sue for purely economic loss and consequential damages?

The Clerk of this Court will transmit to the Supreme Court of Illinois a certified copy of this opinion; a copy of the briefs and appendices submitted to this Court; and, if necessary, the record in this matter.

*Question Certified.*

CUDAHY, Circuit Judge, concurring:

I certainly do not object to a certification to the Illinois Supreme Court if the majority believes this procedure is necessary or desirable. That estimable tribunal very well may apply some esoteric or arcane analysis to sustain the conclusion of the district court. But under ordinary common-law contract rules, the Uniform Commercial Code and the Illinois decisions on warranty to date, it seems to me unfortunately clear that the district court should be reversed.

For one party to be "in privity" with another simply means that one is bound by a contract to the other; the claim of one against the other derives from the contract. A seller of goods, like a roofing system, has a contract with the buyer—a contract of sale. A seller does not as a rule have a contractual relationship with others affected by the goods, either "horizontally" or "vertically" along the chain of distribution. In the case before us, on the other hand, the buyers of the roofing system, Chicago Title and Wachovia, formally assigned their contract rights under the express warranty to Collins. There is thus a contract between Collins and Carboline, and Collins' claim is based on that contract. What more "privity of contract" could one demand?

The Illinois Supreme Court, in *Szajna v. General Motors Corp.,* relied on by the district court and cited by the majority, declined to abolish the privity requirement in a suit for breach of an implied warranty by a plaintiff seeking to recover for economic loss. In so doing, that court reaffirmed the principle that "recovery for economic loss must be had within the framework of contract law." 115 Ill.2d 294, 304, 104 Ill.Dec. 898, 503 N.E.2d 760, 764 (1987) (citing *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 86, 61 Ill.Dec. 746, 435 N.E.2d 443, 450 (1982)). Permitting assignee Collins to maintain an action against seller Carboline (with which it is in privity) for breach of an express warranty resulting in economic loss would not run afoul of the Illinois Supreme Court's holding in *Szajna* and would be consistent with that Court's view favoring reliance on contract principles in cases involving economic loss.

The policy of protecting manufacturers from liability for damages of unlimited scope would not be furthered by precluding Collins' suit. Carboline warranted the roof against leakage for ten years and Collins has sued for damages resulting from the roof's leaks during that period.

Manufacturers like Carboline are protected by the Illinois Uniform Commercial Code, which allows either a buyer or seller to assign any rights under the contract "except where the assignment would mate-

rially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract." Ill.Rev. Stat. ch. 26, para. 2–210(2). Moreover, Carboline could have prevented the assignment of the roofing warranty by so stipulating in its contract with Chicago Title and Wachovia, as is commonly done, but Carboline made no such stipulation and under contract principles is bound by the assignment.

The majority puts a gloss on the problem by referring to something called "original" privity of contract. Presumably, "original" privity is created by the contract of sale between the seller, Carboline, and the buyers, Chicago Title and Wachovia. Although there is still privity when the warranty rights under the contract are assigned to Collins, this privity is by implication no longer "original" but has become something else.

I am afraid that in this respect "privity" is a bit like "pregnancy." Neither lends itself comfortably to the use of modifiers. Either one is or one is not. Here there is unquestionably privity of contract between Collins and Carboline. Whether we characterize it as "original" or "assigned" would make no difference under the authorities. I am not aware that the Illinois Supreme Court has said *anything* pointing to a different conclusion, but I am certainly open to the possibility that for some reason it might want to pursue a heretofore undisclosed mode of analysis.