69 F.3d 839
 Margaret SHIRLEY, individually and as copersonal
representative of the estate of Loren M. Shirley, deceased,
and C. Thomas Wagner, as copersonal representative of the
estate of Loren M. Shirley, deceased, Plaintiffs-Appellees,
v.
Gerald R. RUSSELL and Elmer Buchta Trucking, Incorporated,
Defendants-Appellants.
 No. 94-3280.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 7, 1995.
Decided Nov. 7, 1995.
 
 Richard C. Rusk and G. Byron Overton (argued), Rusk & Overton, Washington, IN, for Plaintiffs-Appellees.
 D. Timothy Born (argued), Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, IN, for Defendants-Appellants.
 Before RIPPLE, MANION, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 Plaintiffs-appellees sued defendants-appellants in diversity for wrongful death and prevailed in a bench trial to the tune of $577,733.83. We are asked in this appeal to determine two issues: (1) whether a spouse's survivor benefits provided by a state pension plan are collateral source payments admissible in evidence under Indiana's collateral source evidence statute, IND.CODE Sec. 34-4-36-2 (1994); and (2) whether eyewitness testimony concerning paycheck notations offered to establish a payroll deduction is inadmissible hearsay under FED.R.EVID. 801 and 803. Lacking guidance from Indiana appellate courts on the first question, we stay this appeal and certify the question of statutory interpretation to the Indiana Supreme Court pursuant to 7 TH CIR.R. 52 and IND.R.APP.P. 15(O).
 
 
 2
 * Loren Shirley was a retired school teacher from Ohio who died on March 3, 1992, as a result of injuries sustained in an automobile accident that day on State Highway 57 in Daviess County, Indiana. The accident was caused by a tractor-trailer operated by Elmer Buchta Trucking, Inc., and driven by Gerald R. Russell. Margaret Shirley and C. Thomas Wagner, copersonal representatives of Loren Shirley's estate, sued Buchta Trucking and Russell under Indiana's wrongful death statute, IND.CODE Sec. 34-1-1-2 (1994), in a diversity action in the United States District Court for the Southern District of Indiana.
 
 
 3
 The evidence at a three-day bench trial showed that prior to his death, Loren Shirley received a gross monthly pension of $1,503.26 from the State Teachers Retirement System of Ohio ("STRS"). This sum consisted of his pension of $1,671.43 minus a deduction of $158.17 to provide a survivor benefit[1] of $751.63 per month for his wife should he predecease her. Both the STRS pension and the survivor benefit included a 3% annual cost-of-living adjustment.
 
 
 4
 Over hearsay objections by defense counsel, the district court admitted Margaret Shirley's testimony that she had seen notations on her husband's paychecks indicating deductions for his STRS pension.[2] Following her testimony, the court denied a defense motion on the "collateral source issue"[3] and ruled that the survivor benefits qualified as an exception contained in section 34-4-36-2(1)(B). Defense counsel offered to present expert testimony that the survivor benefits reduced Margaret Shirley's economic loss by approximately $179,014. Plaintiffs' counsel stipulated to this testimony but not to its admissibility.
 
 
 5
 In its findings of fact and conclusions of law, the district court determined that Margaret Shirley, as a result of the defendants' tortious conduct, had suffered total losses of $577,733.83, of which $293,207 was attributed to the economic loss occasioned by her husband's death.[4] The court wrote:
 
 
 6
 The STRS payments that Margaret Shirley receives each month should not be included in determining economic loss. These payments amount to insurance benefits paid for directly by [Loren] Shirley. He elected to receive less each month in pension benefits so that his wife would be assured of some income after his death. In effect, his insurance premiums were deducted each month from his pension payment.... Consequently, the court will not include the STRS payments received by Margaret Shirley in determining economic loss.
 
 
 7
 Defendants appeal the district court's decision on two grounds. First, they contend the district court erred by failing to include Margaret Shirley's monthly survivor benefit of $751.63 in its loss calculations. They argue that the benefit does not qualify as an enumerated exception prescribed by IND.CODE Sec. 34-4-36-2(1) and should have been admitted into evidence and incorporated in determining Margaret Shirley's economic loss. Second, they contend that Margaret Shirley's testimony establishing her husband's pension contributions was hearsay not within any of the recognized exceptions and was erroneously admitted into evidence. We have jurisdiction to hear this appeal according to 28 U.S.C. Sec. 1291.
 
 II
 
 8
 The district court applied its interpretation of the Indiana collateral source evidence statute to the facts. We review for clear error a district court's application of law to fact. Brooks v. Buscher, 62 F.3d 176, 179 (7th Cir.1995). But this case demonstrates the sometimes murky distinction between interpretation of law and application of law to fact. The district court could apply only its understanding of the Indiana statute. Its construction of the statute therefore preceded its application of that construction, illustrating how application of law to fact may first require interpretation of law. This appeal thus concerns a district court's interpretation of state law, to which we apply a de novo standard of review. Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir.1994), rather than the district court's application of that interpretation to fact, which we would review for clear error.
 
 III
 
 9
 * Prior to 1986, Indiana courts employed the common law collateral source rule, which prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources to reduce damage awards:
 
 
 10
 [C]ompensation for the loss received by plaintiff from a collateral source, independent of the wrongdoer, as from insurance, cannot be set up by the wrongdoer in mitigation of damages.
 
 
 11
 Aldridge v. Abram & Hawkins Excavating Co., 474 N.E.2d 107, 108 (Ind.Ct.App.1985). This rule held tortfeasors fully accountable for the consequences of their conduct regardless of any aid or compensation acquired by plaintiffs through first-party insurance, employment agreements, or gratuitous assistance. Herrick v. Sayler, 160 F.Supp. 25 (N.D.Ind.1958), aff'd, 245 F.2d 171 (7th Cir.1957).
 
 
 12
 The Indiana legislature had two goals when it passed the collateral source evidence statute in 1986, modifying the common law rule:
 
 
 13
 (1) to enable the trier of fact in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss; and
 
 
 14
 (2) to provide that a prevailing party not recover more than once from all applicable sources for each item of loss sustained.
 
 
 15
 IND.CODE Sec. 34-4-36-1. The legislature sought to prevent plaintiffs' multiple recoveries or windfall awards while preserving the accountability element of the common law rule. The pertinent section reads:
 
 
 16
 In a personal injury or wrongful death action the court shall allow the admission into evidence of:
 
 
 17
 (1) proof of collateral source payments, other than:
 
 
 18
 (A) payments of life insurance or other death benefits;
 
 
 19
 (B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or
 
 
 20
 (C) payments made by the state or the United States, or any agency, instrumentality, or subdivision thereof, that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought;
 
 
 21
 (2) proof of the amount of money that the plaintiff is required to repay, including worker's compensation benefits, as a result of the collateral benefits received; and
 
 
 22
 (3) proof of the cost to the plaintiff or to members of the plaintiff's family of collateral benefits received by the plaintiff or the plaintiff's family.
 
 
 23
 IND.CODE Sec. 34-4-36-2. The trier of fact is required to consider evidence admitted under section 34-4-36-2 in determining any award. IND.CODE Sec. 34-4-36-3.
 
 
 24
 Contrary to appellants' assertion, the statute is not, an abrogation of the common law. It upholds the common law principle that a decision to protect one's self against certain risks cannot inure to the benefit of a tortfeasor whose conduct may realize the envisioned risk. The statute does modify the common law by creating a general rule of admissibility; the inadmissible exceptions define the contours of this general rule. These exceptions are specifically enumerated, but the structure of the statute does not aid us in interpreting the purview of its specific terms.
 
 B
 
 25
 A collateral source payment originates from a source wholly independent of the tortfeasor. See 9 I.L.E. Damages Sec. 86 (Supp.1994). STRS paid the survivor benefits to Margaret Shirley upon her husband's death. The benefit is not contingent upon the manner in which he died, nor is it designed to compensate Margaret Shirley for whatever tortious conduct may have contributed to her husband's death. STRS's obligation to pay the benefit flows from its contract with Loren Shirley and is not affected by the circumstances of his death. It is thus a collateral source payment and admissible into evidence unless it falls within one of the recognized exceptions in section 34-4-36-2.
 
 
 26
 There is a colorable argument that the survivor benefit is a species of insurance coverage for which both Loren and Margaret Shirley paid on a monthly basis. Loren Shirley elected to forego almost 10% of his gross monthly pension in consideration for the survivor benefit, and Margaret Shirley also paid for the benefit to the extent that she depended upon the STRS pension for financial support. The monthly withholding of $158.17 (the premium) was consideration for STRS's promise to pay Margaret Shirley $751.63 per month (the coverage), including a 3% annual cost-of-living adjustment, upon Loren Shirley's death (the risk). The STRS general information sheet states that "under a joint and survivor annuity with reversion, if your beneficiary's death occurs before yours, you would go back to the single life annuity above." Loren Shirley held a reversionary interest in the survivor benefit. Had Margaret Shirley predeceased him, the risk would no longer exist and his gross pension would have reverted to its full amount of $1,671.43 since he would have ceased paying the premium.
 
 
 27
 It is also plausible to argue that the survivor benefit is a pension payment and not insurance. The benefit is a creature of the same statute that authorizes the STRS pension plan, OHIO REV.CODE ANN. Sec. 3307.01 et seq. (1994). The Shirleys were eligible to enroll in the survivor benefit program only because Loren Shirley was an STRS pensioner. Id. Secs. 3307.49, 3307.50. STRS characterizes the survivor benefits as retirement benefits in their information sheet. That sheet also states that "STRS benefits are paid in accordance with Section 415 of the Internal Revenue Code." Section 415 limits the amount of benefits that may be paid under, among other things, pension trusts, employee annuity plans, annuity contracts, or simplified employee pensions, as all are defined elsewhere in the Internal Revenue Code. 26 U.S.C. Sec. 415. Taxation of insurance proceeds and annuities not covered by Sec. 415 is governed by 26 U.S.C. Secs. 72, 101. STRS's classification of the survivor benefits in the context of the Internal Revenue Code therefore dilutes the argument that they are insurance proceeds.
 
 IV
 
 28
 * Federal courts must decide diversity cases as if they were sitting as state courts. Todd v. Societe BIC, S.A., 9 F.3d 1216, 1221 (7th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994). If a question of state law has not been addressed by either the state's own courts or federal courts, we may certify the question to the state's highest court pursuant to 7 TH CIR.R. 52, which reads:
 
 
 29
 When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte, or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court.
 
 
 30
 The Supreme Court of Indiana is authorized to accept certified questions as follows:
 
 
 31
 When it shall appear to the Supreme Court of the United States, to any circuit court of appeals of the United States, to the court of appeals of the District of Columbia, or to any United States District Court sitting in Indiana that there are involved in any proceeding before it questions or propositions of the laws of [Indiana], which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of [Indiana], such federal court may certify such questions or propositions of the laws of [Indiana] to the Supreme Court of [Indiana] for instructions concerning such questions or propositions of state law which certificate the Supreme Court of [Indiana], by written opinion, may answer.
 
 
 32
 IND.R.APP.P. 15(O). Certification is appropriate only when the question of state law will control the outcome of the case. Todd, 9 F.3d at 1222; 7 TH CIR.R. 52.
 
 B
 
 33
 This appeal involves a controlling question of state law and warrants certification. The district court's decision to admit Margaret Shirley's testimony turned on its construction of the collateral source statute. The court found her testimony relevant to its determination whether to apply the exception of subsection (1)(B): "insurance benefits for which the plaintiff or members of plaintiff's family have paid for directly." IND.CODE Sec. 34-4-36-2(1)(B). The alleged hearsay was potentially admissible only because the district court was considering the (1)(B) exception. FED.R.EVID. 402 (requiring relevance as a prerequisite for admission). We would address the hearsay question only if we were to agree with the district court's interpretation of section 34-4-36-2. Were we to disagree with the court's statutory construction, the hearsay question would become moot.
 
 
 34
 Assuming, arguendo, that we concurred with the district court's statutory interpretation, we would not reverse even if we agreed with appellants that Margaret Shirley's testimony was inadmissible. There is sufficient documentary evidence to support the appellees' assertion that Loren Shirley elected, and participated in, the survivor benefit option. The erroneous admission of evidence by a district court is harmless "if the record indicates that the trial court would have rendered the same judgment regardless of the error." Barber v. Ruth, 7 F.3d 636, 641 (7th Cir.1993). The district court would have reached the same conclusion (given its interpretation of section 34-4-36-2) without Margaret Shirley's testimony.[5]
 
 C
 
 35
 Certification respects and promotes the core principles of judicial federalism. Lehman Bros. v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). It is therefore all the more appropriate where the certified question implicates a state's important public policy concerns. Doe v. American Nat'l Red Cross, 976 F.2d 372, 374 (7th Cir.1992). The question we certify today has important implications for the state of Indiana and for every state with a similar pension plan and some variant of the collateral source rule. Similar questions will multiply as the number of retired and retiring workers swells in conjunction with the Nation's aging population. Indiana has a significant interest in facilitating application of section 34-4-36-2 in future litigation in Indiana courts.
 
 V
 
 36
 We can find no Indiana decision on point. Nor can we locate the kind of clear guidance of a general sort that has previously counseled against certification. See, e.g., Ludwig v. C & A Wallcoverings, Inc., 960 F.2d 40, 42-43 (7th Cir.1992) (refraining from Rule 52 certification where state case law was consistent with only one result). We do note the narrow construction thus far accorded section 34-4-36-2 by the Indiana Supreme Court. Barnes v. Barnes, 603 N.E.2d 1337, 1346 (Ind.1992) (holding that payments of plaintiff's medical expenses by defendant are not collateral source payments); Manns v. State Dep't of Highways, 541 N.E.2d 929, 934 (Ind.1989) (reasoning that payments by joint tortfeasor are not collateral source payments because court can offset verdict pro tanto). These decisions, however, concern the definition of "collateral source payments" and do not inform an attempt to refine the meaning of the enumerated exceptions contained in subsections (1)(A)-(C).
 
 
 37
 For the foregoing reasons, we respectfully request the Indiana Supreme Court to invoke its authority under IND.R.APP.P. 15(O) and answer the following question of law:
 
 
 38
 Whether a monthly survivor benefit, which is paid to the surviving spouse of a deceased pension recipient in consideration for a reduction of the decedent's pension during his life, is a collateral source payment admissible into evidence under IND.CODE Sec. 34-4-36-2.
 
 
 39
 Further proceedings in this court are stayed while this matter is considered by the Indiana Supreme Court.
 
 
 40
 QUESTION CERTIFIED.
 
 
 
 [1]
 Central to this appeal is the proper classification of these payments. We use the term "survivor benefit(s)" in our discussion but disclaim any corresponding interpretive ramifications
 
 
 [2]
 The transcript shows that the district court allowed plaintiffs to reopen their case "concerning the question of collateral source." Yet Margaret Shirley's subsequent testimony attested to her husband's contribution toward the STRS pension and did not address his elective deduction for the survivor benefit. It is possible, therefore, that the district court admitted her testimony for a purpose different from what it actually showed. There is sufficient documentation in the record, however, to establish that Loren Shirley elected to, and did, have the deduction subtracted from his monthly pension payment
 
 
 [3]
 The record is unclear as to the essence of this motion
 
 
 [4]
 The court used the "total offset method" to evaluate Margaret Shirley's economic loss and considered Loren Shirley's STRS pension of $1,503.26 per month, his earnings as a substitute teacher, and the value of his household services
 
 
 [5]
 We note that the record also shows that her testimony may not have concerned the issue that seemed to occupy the district court. She testified regarding her husband's contributions to the STRS pension--not to the deductions from his pension payments in consideration for the survivor benefit package