Martha **VALERIO**, Plaintiff–Appellant,

v.

**HOME INSURANCE COMPANY,**
Defendant–Appellee.

No. 95–1593.

United States Court of Appeals,
Seventh Circuit.

Argued July 6, 1995.

Decided April 3, 1996.

Dennis J. Mank, F.M. Van Hecke (argued), Van Hecke & Mank, Milwaukee, WI, for Plaintiff-Appellant.

Thomas J. Binder, Peter D. Alberg (argued), Otje, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Defendant-Appellee.

Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Martha Valerio was involved in a car accident in which she suffered a severe spinal cord injury that left her a quadriplegic. Although her spinal cord was not severed in the accident, she did suffer a severance of neurons within her spine that caused her to lose permanently the use of her legs. Valerio filed a claim with the Home Insurance Company under her policy that provided coverage for loss of limb resulting from "actual severance through or above an ankle." After her claim was rejected, Valerio sued Home Insurance in Wisconsin state court. Home Insurance removed the action to federal district court, which under its diversity jurisdiction, granted summary judgment in favor of the insurer. The sole issue for determination on appeal is whether Valerio suffered an actual severance within the meaning of her insurance policy. We have heard oral argument and, after careful deliberation, certify this question *sua sponte* to the Wisconsin Supreme Court.

## BACKGROUND

On June 27, 1991, Martha Valerio, a resident of Whitefish Bay, Wisconsin, was involved in a car accident in Ontario, Canada. An injury to her spine rendered her quadriplegic. The uncontradicted affidavit of her attending physician Dr. Dennis J. Maiman, filed in support of her motion for summary judgment, stated that he diagnosed Valerio with C7 quadriplegia and that she had suffered a "physical severance through a substantial percentage of the neurons within the spine at the level of the neck." According to Dr. Maiman, motor impulses from Valerio's

brain could not bridge the injured site within the spine to facilitate functional movement of her legs. As a result of the injury, Dr. Maiman concluded, Valerio had suffered "complete and permanent loss of use of her legs."

Ms. Valerio, who at the time of the accident was the vice president in charge of policy benefits for Northwestern Mutual Life Insurance Company, was insured under a "Blanket Accident Policy" issued by Home Insurance, a New York corporation that is licensed to conduct business in Wisconsin. The Home Insurance policy, which is included in the record, covered "Loss of Limb, Sight, Hearing, or Speech" in the principal sum of $100,000. "Loss ... for a foot or hand" was defined in the policy as an "actual severance through or above an ankle or wrist joint." The policy, however, did not define the phrases "actual severance" and "above an ankle or wrist joint."

Approximately twenty-one months after the accident, Valerio filed a claim for loss of limb based on her quadriplegia. Home Insurance denied the claim,[1] and Valerio sued the insurer in Wisconsin state court. Based upon diversity jurisdiction, Home Insurance removed the action to federal court. After consenting to proceed before a magistrate judge, 28 U.S.C. § 636(c), the parties filed cross-motions for summary judgment.

The magistrate judge granted summary judgment in favor of Home Insurance. Magistrate Judge Goodstein noted that, although the Wisconsin courts had not previously interpreted the phrase "actual severance" in an insurance policy, the definition of these words was unambiguous and required "substantial, physical dismemberment of the hands or feet." Because Valerio had all of her members intact, the magistrate judge held that Valerio's injury was not covered under her policy as a matter of law. The magistrate judge did not reach the question whether Valerio had notified Home Insurance of her claim in a timely fashion.[2]

---

1. The record before us does not contain a copy of Home Insurance's rejection of Valerio's claim.

2. Under the policy, the insured was required to furnish a notice of claim and a proof of loss to Home Insurance within 90 days of the accident.

## DISCUSSION

The sole issue presented on this appeal is whether Valerio's injury constitutes, for purposes of coverage under her insurance policy, a loss of limb resulting from an "actual severance through or above an ankle." Valerio argues that the policy's definition of loss is sufficiently expansive to permit an interpretation that the loss of use of her feet due to quadriplegia triggers coverage. Since she suffered a severance of neuron bundles within her spine and will not again have the use of her feet, Valerio asserts that there has been an actual severance above her ankle and that she is entitled to coverage. Home Insurance, on the other hand, urges us to adopt an interpretation that conditions coverage upon a complete separation of the feet from the body.

Both parties agree that Wisconsin's substantive law applies in this case. However, the Wisconsin courts have not yet had occasion to interpret the "actual severance" phrase at issue here. As a federal court sitting in diversity, we must use our own best judgment to estimate how the Wisconsin Supreme Court would rule as to its law. See Todd v. Societe BIC, S.A., 9 F.3d 1216, 1221 (7th Cir.1993) (en banc). In the absence of Wisconsin authority, we may consider decisions from other jurisdictions.

Although courts of other jurisdictions have addressed loss of limb coverage under insurance policies requiring "actual severance through or above" a wrist or ankle, there has not been unanimity of interpretation. The majority of courts interpreting the "actual severance" phrase have found it unambiguous and have construed it to require the physical separation of the member from the body as a precondition of coverage.[3] Moreover, in three cases with factual circumstances resembling those here—lower-body paralysis resulting from spinal injuries—courts have denied coverage under policies that required "actual severance through or above the wrist or ankle."[4] Only a minority of courts, including the supreme courts of both Washington and Montana, have held that such "actual severance" phrases do not require total physical dismemberment.[5]

3. See, e.g., Francis v. INA Life Ins. Co. of New York, 809 F.2d 183, 187 (2d Cir.1987) (denying coverage where insured did not suffer substantial physical dismemberment of hand, though he did suffer lacerations of wrist, tendons, nerves and arteries); Reid v. Life Ins. Co. of North America, 718 F.2d 677, 682 (4th Cir.1983) (denying coverage where leg was not severed from body and there was no permanent severance of muscles, nerves, blood vessels, lymph vessels, skin or other connective tissue); Traverse v. World Service Life Ins. Co., 436 F.Supp. 810, 812 (W.D.Okla. 1977) (denying coverage for loss of use of hands that were not actually severed).

4. See, e.g., Juhlin v. Life Ins. Co. of North America, 301 N.W.2d 59, 61 (Minn.1980) (upholding denial of coverage to insured who had sustained a compression fracture of spine that rendered him paraplegic; dismemberment or at least a severe wounding of limb must occur before a policy's use of words "loss by actual severance" could be construed against insurer); Sitzman v. John Hancock Mut. Life Ins. Co., 268 Or. 625, 632, 522 P.2d 872, 875 (1974) (finding "no justifiable reason ... to support a supposition by the insured that actual severance through or above the ankle joint also means severance of the spinal cord with resultant loss of use of the insured's feet without any physical injury other than loss of motor function"). See also Murray v. Insurance Co. of North America, 490 S.W.2d 250, 252 (Tex. Civ.App.1973) (denying coverage where loss of use of feet and legs resulted from severance of spinal cord); J.L. Isham, Annotation, Accident Insurance: What is "Loss" of Body Member, 51 A.L.R. 4th 156, 165 (1987) ("[P]aralysis due to a spinal injury ... is not a compensable 'loss' under an 'actual severance at or above' clause [because] the intent of the quoted language is so unmistakably clear that there is no room for a construction favoring compensation of functional losses.").

5. In Neer v. Fireman's Fund, American Life Ins. Co., 103 Wash.2d 316, 692 P.2d 830 (1985), the insured plaintiff severed his spinal column when he fell from a tree and permanently lost the use of his feet. The Washington Supreme Court allowed the plaintiff to recover under a "Loss of Life Accident Indemnity" policy providing coverage for loss of both feet by the slightly different but analogous phrase "complete severance through or above the ... ankle joint." Id. at 317–18, 692 P.2d at 832. The Neer court distinguished contrary authority on the basis that "[n]othing in the policy limits loss to dismemberment or amputation as did provisions in many of the policies in [other] cases...." Id. at 320, 692 P.2d at 833. See also Stanley v. Safeco Ins. Co. of America, 109 Wash.2d 738, 741–42, 747 P.2d 1091, 1092–93 (1988) (reaffirming Neer's analysis). The holding of Neer was subsequently adopted by the Montana Supreme Court in Bauer v. Kar Products, Inc., 230 Mont. 422, 425–26, 749 P.2d 1385, 1387 (1988).

Given the conflicting case law from other jurisdictions and the absence of Wisconsin authority on the issue, we are unwilling to conjecture how the Wisconsin Supreme Court might interpret the insurance policy language here. "The risk of making erroneous predictions on questions of state law is more pronounced when there is either no controlling precedent from the state supreme court or the rulings of courts addressing the issue presented for federal review are unclear or conflicting." *Transamerica Ins. Co. v. Henry*, 904 F.2d 387, 390 (7th Cir.1990). In such situations, we have frequently chosen to avoid speculation and uncertainty by certifying the dispositive question of state law to the state supreme court pursuant to Circuit Rule 52.[6] *See Shirley v. Russell*, 69 F.3d 839, 843 (7th Cir.1995). Where neither party has requested certification, as is the case here, we have occasionally certified questions to a state's highest court on our own motion. *See e.g., DeGrand v. Motors Ins. Corp.*, 903 F.2d 1100, 1104 (7th Cir.1990); *Collins Co. v. Carboline Co.*, 837 F.2d 299, 302–03 (7th Cir.1988); *Citizens for John W. Moore Party v. Board of Election Comm'rs of Chicago*, 781 F.2d 581, 583 (7th Cir.1986). Wisconsin allows for certification of issues "which may be determinative of the cause" and for which "there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state." Wis. Stat. § 821.01.[7]

We believe that certification to the Wisconsin Supreme Court is appropriate in this case. First, the construction of the "actual severance" policy language will control the outcome of this appeal. If the phrase is construed to unambiguously cover the loss of use of feet resulting from a severance of

neural bundles within the spine, the case will be reversed and remanded for a determination whether Valerio gave timely notice to Home Insurance. Or, if the phrase is found to be ambiguous, it will presumably be construed against the drafter, Home Insurance, so as to effectuate coverage, thereby also warranting a reversal and remand. If, however, the phrase is interpreted to preclude coverage, the judgment of the district court will be affirmed.

In addition, the Wisconsin courts have not yet construed this phrase, which is common to many policies. Construction of the phrase will affect the State of Wisconsin (which has a significant interest in the interpretation and enforcement of insurance policies executed within its borders), insurers and every policyholder who has a policy similar to that of Valerio. If the scope of policy language and application is made less ambiguous, the parties to an insurance policy will more likely be able to contract knowingly and appropriately to limit their respective risks. The circumstances thus weigh in favor of giving the Wisconsin Supreme Court an opportunity to determine state law on this issue.

We respectfully request the Wisconsin Supreme Court to answer the following question:

Does quadriplegia resulting from the severance of a substantial percentage of neurons within the spine constitute loss of limb due to an "actual severance through or above an ankle" for purposes of an accident insurance policy?

Nothing in this certification, including our statement of the question to be certified, is meant to limit the scope of inquiry by the

---

6. Circuit Rule 52 provides in relevant part:

When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, *sua sponte* or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court.

7. Section 821.01 of the Wisconsin Statutes provides for such certification:

The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Wisconsin Supreme Court. Further proceedings in this court are stayed while the matter is considered by the Wisconsin Supreme Court.

QUESTION CERTIFIED.