**Lawrence F. STEPHAN, a citizen of Illinois, and Patricia L. Stephan, a citizen of Illinois, Plaintiffs–Appellees,**

v.

**ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Colorado corporation, Defendant–Appellant.**

Nos. 96–4171, 97–1798.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1997.

Decided Nov. 10, 1997.

Mitchell Bryan (argued), Scott H. Reynolds, Levenfeld, Eisenberg, Janger, Glassberg & Samothy, Chicago, IL, for Plaintiffs–Appellees.

George N. Vurdelja, Jr. (argued), Vurdelja & Heaphy, Chicago, IL, for Defendant–Appellant.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The Colorado Supreme Court has not considered whether a default judgment gives rise to issue preclusion under Colorado law. This, however, is the threshold question in appellees Patricia and Lawrence Stephan's suit against appellant Rocky Mountain Chocolate Factory, Inc. (Rocky Mountain). The Stephans sued Rocky Mountain for a declaration that they have no financial exposure under a sublease, and the district court granted summary judgment sua sponte for the Stephans. In addition to the question of Colorado law, Rocky Mountain's appeal raises the issues of whether an Illinois circuit court's refusal to deny recognition to a default judgment has preclusive effect under Illinois law, and whether the district court's entry of summary judgment sua sponte was appropriate. But in the absence of guidance on whether a default judgment is issue-preclusive under Colorado law, we stay this appeal and certify a question to the Colorado Supreme Court.

I. Background

Rocky Mountain, a Colorado corporation, franchises retail confectionary stores. Lawrence and Patricia Stephan formed a company (Rocky Mountain–Illinois) to sell "sweet temptations" in Illinois. On August 16, 1991, Rocky Mountain granted the Illinois company a franchise for downtown Chicago. On the same day, Rocky Mountain leased premises for the Chicago store from Equity Property Management Corp. (Equity). Rocky Mountain then immediately executed a sublease with—and here is where the parties disagree—either Rocky Mountain–Illinois, or the combination of Rocky Mountain–Illinois and the Stephans. The sublease required

that the sublessee perform all the terms of Rocky Mountain's lease with Equity.

Whatever its true identity, the sublessee failed to make certain rent payments to Equity. In April of 1995, Rocky Mountain paid Equity $28,145.38 to cover the sublessee's default. Rocky Mountain then sued Rocky Mountain–Illinois and Lawrence in the district court for the county of La Plata, Colorado. Both defendants failed to appear, and the district court entered a default judgment against them on August 14, 1995.

In October of 1995, Rocky Mountain registered the Colorado judgment in the Circuit Court of Cook County, Illinois. Lawrence filed a motion to deny registration to the judgment on the grounds that the Colorado court lacked personal jurisdiction over him and that Rocky Mountain had obtained the judgment by fraud. The circuit court denied Lawrence's motion, and no appeal was taken.

In July of 1996, Rocky Mountain–Illinois, the Stephans and Rocky Mountain entered into a settlement agreement. Rocky Mountain–Illinois and the Stephans paid Rocky Mountain $55,000,[1] and Rocky Mountain released the judgments and judgment liens previously described and covenanted not to sue Patricia. But the settlement did not resolve all potential disputes between the parties. In a combined forcible entry and rent collection action against Rocky Mountain and Rocky Mountain–Illinois, Equity continued to pursue claims that were accruing under the lease. The settlement agreement expressly stated that it did not relate to or release any claims or defenses that might arise on account of Equity's lawsuit.

To prevent Rocky Mountain from pursuing them individually for any liability that might arise out of Equity's action, the Stephans sought, in federal district court, a declaration that they had no further financial exposure under the sublease. Rocky Mountain responded with a motion for dismissal or, alternatively, summary judgment. The district court judge dismissed the Stephans' complaint insofar as it pertained to Patricia;

Rocky Mountain had conceded that it could have no further claims against her because it had covenanted not to sue, and hence there was no case or controversy that involved her. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 948 F.Supp. 765, 768 (N.D.Ill. 1996). Judge Shadur also granted summary judgment sua sponte in favor of Lawrence, on the ground that he had no personal liability for performance of the sublease. *Id.* at 775. Later Rocky Mountain filed a motion seeking relief from the entry of adverse judgment pursuant to Federal Rule of Civil Procedure 60(b). Judge Shadur denied the motion. Rocky Mountain appealed both the grant of summary judgment and the denial of its Rule 60(b) motion to this court. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Discussion

Described in general terms, issue preclusion—or, as it was formerly called, collateral estoppel-limits the litigation of issues that have been decided in a previous action. As a necessary predicate to a possible grant of summary judgment, Judge Shadur had to determine whether the Colorado default judgment collaterally estopped Lawrence from litigating his financial exposure under the sublease. As Judge Shadur noted, Rocky Mountain's complaint in the Colorado action alleged that Lawrence was personally liable under the sublease. *Id.* at 772 n. 6; Colo. Compl. ¶ 6. If issue preclusion applied to issues subsumed under the default judgment, then Judge Shadur would have been prevented from making an independent determination about Lawrence's financial exposure; Lawrence would have been precluded from litigating that issue. In the absence of controlling precedent from the Colorado Supreme Court, Judge Shadur concluded that the default judgment rendered against Lawrence did not give rise to issue preclusion. 948 F.Supp. at 771–74.

In diversity jurisdiction, a federal court must attempt to resolve issues in the same manner as would the highest court of

---

1. In May of 1995, Rocky Mountain had filed another action in Colorado against Rocky Mountain–Illinois and Lawrence for breach of the franchise agreement and to collect on a note.

Both defendants failed to appear, and the court entered a default judgment against them. The settlement agreement also satisfied that judgment.

the state that provides the applicable law. *See Todd v. Societe BIC,* 9 F.3d 1216, 1221 (7th Cir.1993) (en banc) (plurality opinion). Because Colorado rendered the default judgment, its law governs whether the judgment has issue-preclusive effect. *See* 28 U.S.C. § 1738 (full faith and credit statute); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). Without clear guidance from the Colorado Supreme Court, we must use our best judgment to determine how that court would construe its own law. *See Valerio v. Home Ins. Co.,* 80 F.3d 226, 228 (7th Cir.1996). In so doing, we may consider the decisions of the lower Colorado courts and the courts of other jurisdictions, as well as other persuasive authorities.

In 1984, the Colorado Court of Appeals (an intermediate appellate court) twice addressed the issue-preclusive effect of a default judgment. These cases involved plaintiffs who had defaulted in earlier actions. *See Ortega v. Board of County Comm'rs,* 683 P.2d 819 (Colo.Ct.App.1984); *Aspen Plaza Co. v. Garcia,* 691 P.2d 763 (Colo.Ct.App.1984). In both instances, the court found that the default judgment resulted in collateral estoppel. But for reasons noted below, we are hesitant to rely solely on *Ortega* and *Aspen* in determining how the Colorado Supreme Court would rule if confronted with the facts we have before us.

The facts in *Ortega* differ markedly from those in Rocky Mountain's appeal. Thus, in an earlier lawsuit, certain individuals sought to quiet title to a tract of land, and asked that the county treasurer be restrained from issuing Ortega a deed to the disputed property. The court eventually entered a default judgment in favor of the plaintiffs. *See Ortega,* 683 P.2d at 820. Ortega later brought suit claiming ownership of the property and requesting the treasurer to issue him a deed. The court of appeals held that collateral estoppel barred Ortega's suit:

> [A default judgment] "precludes the relitigation ... of issues which were actually litigated in the first action...." Therefore, where ... a default judgment has been entered against a party who later seeks to litigate an issue disposed of in the prior litigation, the subsequent action is barred.

*Id.* at 821 (quoting *Quality Sheet Metal Co. v. Woods,* 2 Haw.App. 160, 627 P.2d 1128, 1130 (1981)). In comparison with Lawrence, however, Ortega had a significant level of involvement in the earlier lawsuit against him. The trial court had ordered Ortega to appear and show cause why the county treasurer should not be preliminarily enjoined from issuing a deed to Ortega. The trial court also later considered and denied Ortega's motion to dismiss the complaint. *Id.* Despite the fact that Ortega eventually defaulted, his degree of participation in the initial lawsuit was far more extensive than that of Lawrence, who failed even to appear in the Colorado court. Given this apparently important factual distinction, it is not clear whether *Ortega* is dispositive.

To some extent, the facts in *Aspen* more closely resemble those in this appeal. In *Aspen,* a party bringing a counterclaim had defaulted in an earlier action after having failed to appear. Again the court of appeals announced that in principle a default judgment gave rise to a collateral estoppel. *Aspen,* 691 P.2d at 764. However, the court found that the issues subsumed in the first action differed from those in the second action. Thus, the default judgment could not have issue-preclusive effect. *Id.* at 765. Given this result, the court of appeals had no occasion to consider the appropriateness of collateral estoppel where the defaulting party has minimal involvement in an earlier action. Hence, we do not believe that *Aspen* controls.

Although other courts have addressed whether default judgments give rise to issue preclusion, there is no unanimity. For example, the Virginia Supreme Court has held that even when a defaulting defendant fails to appear, an issue may be "actually litigated" and thus have preclusive effect. *See TransDulles Center, Inc. v. Sharma,* 252 Va. 20, 472 S.E.2d 274, 276 (1996); *see also Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 627 A.2d 374, 379 (1993) (finding that collateral estoppel results from default judgments in some circumstances). The West Virginia Su-

preme Court, in contrast, has found that, when a defendant fails to answer a complaint, a default judgment does not produce a collateral estoppel. *See Christian v. Sizemore*, 185 W.Va. 409, 407 S.E.2d 715, 719 (1991); *see also Marston v. United States Fidelity and Guar. Co.*, 135 N.H. 706, 609 A.2d 745, 748 (1992) (holding that default judgments are not issue-preclusive). A majority of federal courts similarly have found that default judgments do not give rise to collateral estoppel. *See, e.g., United States v. Bailey*, 957 F.2d 439, 443 (7th Cir.1992). Indeed, the relevant Restatement also adheres to this view. *Restatement (Second) of Judgments* § 27 cmt. e (1982).

■ As we have observed in the past, "certification is an alternative to prognostication." *Todd*, 9 F.3d at 1222 (plurality opinion). In light of the conflicting authority and our uncertainty about the applicability in these circumstances of prior Colorado Court of Appeals decisions, we are unwilling to hypothesize how the Colorado Supreme Court would rule. We thus have decided to invoke Circuit Rule 52,[2] which provides for certification by a federal court of questions of state law to the state supreme court. Colorado, for its part, allows certification of questions of law which may be determinative of a case before the certifying court.[3] Although neither party here has requested certification, we are free to certify questions on our own motion. *See, e.g., Valerio*, 80 F.3d at 229; *DeGrand v. Motors Ins. Corp.*, 903 F.2d 1100, 1104 (7th Cir.1990); *Collins Co. v. Carboline Co.*, 837 F.2d 299, 302–03 (7th Cir. 1988).

We believe this appeal warrants certification. First, it involves a controlling question of state law. *Compare Shirley v. Russell*, 69 F.3d 839, 844 (7th Cir.1995) (certifying ques-

tion when other issues on appeal hinged on its resolution) *with Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1296 (7th Cir.1993) (declining to certify because appellant's claims could be resolved without reaching questions of state law). The district court granted summary judgment sua sponte only because it believed that Lawrence's financial exposure under the sublease had not been precluded. We can address the question whether the Illinois circuit court's recognition of the Colorado judgment gives rise in its own right to collateral estoppel under Illinois law, and the issue of sua sponte summary judgment, only if the district court's interpretation of Colorado law is correct. If the district court was wrong, these other questions are moot.

In addition, this issue may be of significant interest to the Colorado Supreme Court. If the supreme court clarifies its rules on default judgments, it will help make clear, within Colorado as well as in other jurisdictions, the circumstances, if any, under which Colorado default judgments are issue-preclusive. Parties who litigate in Colorado, as well as others, will therefore benefit. Some litigants may default for valid reasons; for example, the cost of litigation may be more than the value of the lawsuit, or the litigant may find it inconvenient to produce evidence in the forum. A party who chooses default should understand the full ramifications of that decision.

We thus respectfully request the Colorado Supreme Court to answer the following question:

Does a default judgment in an earlier lawsuit have issue-preclusive effect in a later lawsuit, specifically in circumstances in

---

**2.** Circuit Rule 52 provides in relevant part:

When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court.

**3.** Colorado Appellate Rule 21.1(a) provides:

The Supreme Court may answer questions of law certified to it ... if there is involved in any proceeding before [the certifying court] questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

which the defaulting defendant failed to appear in the prior action?

We invite, of course, the Justices of the Colorado Supreme Court to reformulate our question if they feel that course is appropriate. We do not intend anything in this certification, including our statement of the question, to limit the scope of their inquiry.

Further proceedings in this court are stayed while the Colorado Supreme Court considers this certification.

QUESTION CERTIFIED.