**BANCO PANAMERICANO, INC.; A South Dakota corporation; Chiplease, Inc., a South Dakota corporation; Leon A. Greenblatt III; and Leslie Jabine, Plaintiffs,**

v.

**HEALTH RISK MANAGEMENT, INC., a Minnesota corporation, Defendant.**

**No. 99 C 2529.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 21, 1999.

C. Philip Curley, John D. Cummins, Jr., Joyce Amy Pollack, Robinson, Curley & Clayton, P.C., Chicago, IL, for plaintiffs.

Ronald L. Marmer, Howard Steven Suskin, Jenner & Block, Chicago, Illinois, James E. Dorsey, Emily E. Duke, Fredrikson & Byron, P.A., Minneapolis, MN, for defendant.

## ORDER FOR CERTIFICATION

MORAN, Senior District Judge.

Plaintiffs own more than 10% and less than 15% of the outstanding shares in Health Risk Management, Inc. (HRMI), almost all of which are held in street name.[1] These beneficial owners seek to

---

1. Plaintiff Banco Panamericano, Inc. holds 100 shares of record and is the only plaintiff

holding record shares.

call a special meeting of HRMI shareholders, pursuant to Minn.Stat. § 302A.433, subd. 1, for the purpose of repealing a "poison pill" provision (which makes it impracticable for any person to buy in excess of 15% of the outstanding shares) and amending provisions of the articles of incorporation to revise directors' qualifications (in order to prevent a majority of the incumbent directors from standing for reelection). Defendant justifies its refusal to schedule a meeting on three grounds: first, HRMI maintains that under § 302A.433, subd. 1(e) only record holders may vote to call a special meeting; second, HRMI believes that repeal of a "poison pill" provision is a power reserved exclusively for the board of directors under Minnesota law; and finally, because plaintiffs seek the aforementioned changes for the purpose of acquiring a controlling share of stock, HRMI believes that plaintiffs' effort is one to "directly or indirectly facilitate or effect a business combination" and, consequently, the required percentage of shareholders calling for the meeting is 25% pursuant to Minn.Stat. § 302A.433, subd. 1(e). Plaintiffs dispute HRMI's interpretation of the controlling provisions and the parties have filed cross motions for summary judgment.

In a memorandum and order dated November 19, 1999, we indicated our belief that certification of the three dispositive questions to the Minnesota Supreme Court was advisable. The parties' comments have confirmed our initial assessment and we now send this order of certification to the Minnesota Supreme Court pursuant to Minn.Stat. § 480.065, subd. 3 (1997).

The United States Supreme Court has strongly endorsed the certification procedure for federal courts faced with novel and unsettled questions of state law. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 75–80, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). "Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudications is particularly gratuitous when ... the state courts stand willing to address questions of state law on certifica-

tion from a federal court." *Id.* at 79, 117 S.Ct. 1055 (*quoting Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 510, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (O'Connor, J., concurring)); *see also Valerio v. Home Ins. Co.,* 80 F.3d 226, 229 (7th Cir.1996) (certifying a question to the Wisconsin Supreme Court to "avoid speculation and uncertainty"); *Transamerica Ins. Co. v. Henry,* 904 F.2d 387, 390 (7th Cir.1990) ("The risk of making erroneous predictions on questions of state law is more pronounced when there is ... no controlling precedent from the state supreme court...."). Moreover, the procedure has the advantage of producing an authoritative interpretation of Minnesota corporate law. *See Kucharek v. Hanaway,* 902 F.2d 513, 517 (7th Cir.1990) ("[A]n important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative."). Ultimately, use of the certification procedure in a given case "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

As for the receiving court, the Minnesota Supreme Court will resolve a certified question only when "the answer may be determinative of an issue in pending litigation in the certifying court" and for which "there is no controlling appellate decision, constitutional provision, or statute of this state." Minn.Stat. § 480.065, subd. 3. Here, the correct interpretation of the Minnesota Business Corporation Act will be determinative; if the certified questions are resolved in accordance with HRMI's understanding of the relevant provisions, summary judgment would be entered in its favor.

For the foregoing reasons, we respectfully certify the following questions and stay this action pending their resolution:

1. Does the word "shareholder," as used in Minn.Stat. § 302A.433, subd. 1(e) and subd. 2, include a beneficial owner of shares held in street name,

or does it mean only a person registered on the books or records of a corporation or its transfer agent or registrar as the owner?

2. Is the repeal of a corporate "poison pill" a matter that may properly be mandated by the shareholders of a corporation or is that a power reserved exclusively for the Board of Directors under Minnesota corporate law?

3. Is a hostile takeover attempt wherein the hostile party seeks to repeal a corporate "poison pill" so as to facilitate its acquisition of additional shares and seeks to amend the articles of incorporation to change directors' qualifications in a manner that prevents a majority of the incumbent directors from standing for reelection to the board, all for the purpose of acquiring control, but with no expression of any intention to achieve or facilitate a "business combination" as that term is defined by Minn.Stat. § 302A.011, subd. 46, an effort "to directly or indirectly facilitate or effect a business combination" for the purposes of Minn. Stat. § 302A.433, subd. 1(e)?

We do not intend our formulation of the questions to limit the scope of the inquiry and acknowledge that the Minnesota Supreme Court may reformulate the questions. The entire record in this case, including copies of the parties' briefs and the names and addresses of counsel, is transmitted to the Minnesota Supreme Court.