In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1355

NETHERLANDS INSURANCE COMPANY,
*et al.*,

*Plaintiffs-Appellees,*

*v.*

PHUSION PROJECTS, INCORPORATED,
*et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 1253 — **Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 23, 2013 — DECIDED DECEMBER 16, 2013

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Phusion Projects, Inc. and Phusion Projects, LLC are the business entities responsible for the manufacturing and distribution of an alcoholic beverage called "Four Loko." In addition to alcohol, the original Four Loko formula contained energy stimulants, such as caffeine, guarana, taurine, and wormwood.

Phusion purchased a commercial general liability insurance policy from the Netherlands Insurance Company and a commercial umbrella liability insurance policy from Indiana Insurance Company. Both insurance companies are members of the Liberty Mutual Group and will be collectively referred to as "Liberty" herein. Both policies include identical Liquor Liability provisions, which exclude coverage for bodily injury or property damage when Phusion "may be held liable by reason of: (1) causing or contributing to the intoxication of any person."

Five plaintiffs sued Phusion in separate state court actions: the *Keiran* complaint, the *McCarroll* complaint, the *Rivera* complaint, the *Rupp* complaint, and the *Mustica* complaint. All five plaintiffs alleged that the consumption of Four Loko caused their injury, in whole or in part. Phusion notified Liberty, who then filed in federal court for a declaratory judgment regarding the scope of its insurance coverage. Liberty contended that the Liquor Liability Exclusion in Phusion's insurance policies excluded coverage for the five underlying liability claims because each lawsuit involved injury by reason of intoxication. Phusion filed a counterclaim, contending that the Liquor Liability Exclusion did not apply and that Liberty owed a duty to defend and indemnify. Each side moved for summary judgment.

The first lawsuit involved Jason Keiran, who accidentally shot and killed himself after drinking Four Loko. The *Keiran* complaint alleges that after consuming several cans of Four Loko, Keiran was intoxicated but could not fall asleep. After being awake for 30 hours, Keiran, his friend, and Keiran's roommate decided to fire a Walther P22 handgun in the

backyard of their rental house. Keiran experimented with the gun and accidentally shot himself in the head, dying later that evening. The complaint includes two claims against Phusion; a Negligence / Products Liability claim and a Strict Liability / Products Liability claim.

The plaintiff in the second lawsuit is Briana McCarroll, who was injured as a passenger in a car accident caused by a friend who drove recklessly after drinking Four Loko. *McCarroll* alleges that the consumption of Four Loko caused her friend Danielle Joseph to drive aggressively, carelessly, and at speeds over 100 miles per hour. Joseph struck another car, Joseph's car flipped, and McCarroll was ejected. The complaint includes two counts against Phusion; a Negligence claim and a Strict Liability claim. Under the Negligence claim, McCarroll lists eleven different theories on how Phusion breached its duty of care, and the Strict Liability claim lists twelve theories.

The third lawsuit was filed by Janice Rivera. Rivera was also injured as a passenger in the car driven by Joseph. The allegations in Rivera's complaint arise from the same set of facts in the *McCarroll* case. The *Rivera* complaint includes five claims against Phusion, based on Strict Liability, Failure to Warn, Design Defect, Negligence, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

The fourth lawsuit involved John Rupp III, who experienced some sort of paranoid episode after drinking Four Loko. The *Rupp* complaint alleges that Rupp drank two cans of Four Loko before attending a concert, causing Rupp to exhibit unusual behavior that led the concert staff to contact his parents and request that he be picked up. Once home, Rupp

fled the supervision of his parents and ran out into a busy highway where he was struck and killed by oncoming traffic. There are five claims against Phusion in the complaint, including a defective product claim, a violation of the Wrongful Death Act claim, a general wrongful death claim, a general negligence claim, and a violation of the Family Expense Act.

The plaintiff of the fifth lawsuit is Michael Mustica, who awoke with heart troubles after drinking Four Loko the night before. The district court found that Liberty did have a duty to defend Phusion in Mustica's case because Mustica did not allege an injury arising from intoxication, but alleged that Four Loko was a dangerous product that led to his heart condition. Since the ruling establishing Liberty's duty to defend, the *Mustica* lawsuit settled and is no longer at issue.

The district court found that the Liquor Liability Exclusion was unambiguous and that Liberty had "no duty to defend any case arising from Phusion causing a person to become intoxicated." The district court examined the five underlying cases in the context of comparable automobile exclusions and ruled that four of the five cases fell within the Liquor Liability Exclusion. The district court ruled that Liberty had no duty to defend the *Keiran, McCarroll, Rivera,* or *Rupp* lawsuits. The district court never reached the issue of Liberty's duty to indemnify because it was not ripe for consideration.

Phusion appeals, contending that the district court erred in two ways. First, Phusion argues that the district court misinterpreted the Liquor Liability Exclusion by reading the exclusion too broadly in favor of the insurer. Second, Phusion argues that the district court misinterpreted the complaints in the underly-

ing suits by reading the allegations too narrowly, also in favor of the insurer.

## DISCUSSION

In the cross-motions for summary judgment, the parties agree that factual discrepancies do not exist and the court's ruling depends only on the resolution of purely legal issues. *Ace Am. Ins. Co. v. RC2 Corp., Inc.*, 600 F.3d 763, 766 (7th Cir. 2010); *Exelon Corp. v. Dep't of Revenue*, 234 Ill.2d. 266, 285 (2009). We review the district court's interpretation of the insurance policies and the resulting grant of summary judgment *de novo*. *Ace Am. Ins. Co.*, 600 F.3d at 766.

## Policy Construction

A federal court sitting in diversity "must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Stephan v. Rocky Mountain Chocolate Factory, Inc.,* 129 F.3d 414, 416–17 (7th Cir. 1997). The construction of an insurance policy is a question of law. *Am. States Ins. Co. v. Koloms,* 177 Ill.2d 473, 479–80 (1997). There is no dispute that Illinois law governs the insurance policies in this case. In the absence of Illinois Supreme Court precedent, we "must use our best judgment to determine how that court would construe its own law," and may consider the decisions of the Illinois appellate courts, well-reasoned decisions from other jurisdictions, as well as persuasive authorities. *Stephan,* 129 F.3d at 417.

To determine whether an insurance coverage exclusion applies, Illinois courts interpret insurance policies under the rules of contract interpretation. *Founders Ins. Co. v. Munoz,* 237

Ill.2d 424, 433 (2010). In its interpretation of the insurance policy, the court's primary function is to ascertain and give effect to the intent of the parties as expressed in the contract. *Id.* If the language of the insurance policy is unambiguous and does not offend public policy, the provision will be applied as written. *Id.* Any ambiguity will be construed liberally in favor of the insured. *Id.* The court will find an ambiguity "where the policy language is susceptible to more than one reasonable interpretation," and not simply where the parties disagree as to the policy's meaning. *Id.*

The two Liberty insurance policies contain identical Liquor Liability Exclusions stating:

> This insurance does not apply to: …
>
> c. Liquor Liability
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.
>
> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

Phusion contends that the district court erred in its finding that "[t]he plain language of [the] exclusion is only susceptible to one reasonable interpretation: all suits based on allegations that Phusion's products caused someone to become intoxicated, leading to personal injury, are excluded under both policies." Phusion argues that the district court read the exclusion too broadly; instead a plain reading of the provision would lead to the conclusion that it is not applicable in Phusion's case.

Liberty, on the other hand, contends that Phusion is attempting to create a false causation issue by drawing a distinction between the phrases "arising out of" and "by reason of."

Even if there might be some difference between "arising out of" and "by reason of" in some instances, Phusion has failed to articulate how the phrase "by reason of" would limit the scope of the Liquor Liability Exclusion in this case. By Phusion's contention, the phrase "arising out of" is "both broad and vague," *Burlington Northern R.R. Co. v. Illinois Emcasco Ins.*, 511 N.E.2d 776, 779 (Ill. App. 1987), whereas, "by reason of," as written in Liberty's insurance policies, requires a "direct, causal relationship" between Phusion's products and the personal injury, *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 393 (1993). We are not persuaded that the Illinois courts have recognized such a difference. The two cases, *Burlington Northern R.R.* and *Crum and Forster Managers* used different language to describe the effects of those phrases, but neither case actually confronted *both* phrases and found a meaningful difference. Like the district court, we

find that the language of the exclusion is clear and unambiguous.

### Duty to Defend

The Illinois Supreme Court has established a general guideline for determining whether an insurer has a duty to defend its insured. *Northbrook Prop. and Cas. Co. v. Transp. Joint Agreement,* 194 Ill.2d 96, 97 (2000). Reversing the appellate court, the Illinois Supreme Court interpreted the scope of an automobile exclusion in a commercial general liability policy to hold that an insurer had no duty to defend against numerous lawsuits arising from a collision between a train and a school bus. *Id*. The court explained that:

> To determine an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.

*Id.* at 98 (citations omitted). The *Northbrook* court emphasized that for the automobile exclusion to not apply, and the insured to be within policy coverage, the underlying complaint must allege facts that are "wholly independent" from the event that led to the injury. *Id*. at 99. Allegations of inadequate planning, inadequate inspection, and failure to warn were "nothing more

than rephrasings of the fact" that students' injuries arose from the operation of a motor vehicle. *Id.* The Illinois Supreme Court has never considered the applicability or scope of a liquor liability exclusion as applied to a liquor manufacturer. We think the Illinois Supreme Court would likely extend the reasoning of *Northbrook* to this issue and would reject Phusion's efforts to disguise the role that intoxication allegedly played in the underlying cases.

We are not persuaded by Phusion's argument that its additional wrongdoing of adding energy stimulants to its drinks somehow invokes Liberty's duty to defend. For this proposition, Phusion relies on several "dram shop" cases that interpreted similar liquor liability exclusions. *See, e.g., Beukema v. Yomac Inc.*, 284 Ill.App.3d 790, 791 (1996). But, the reasoning in the dram shop cases does not apply here for a couple reasons. First, Phusion does not face dram shop exposure; it sells through third party distributors and does not directly serve alcohol to patrons. 235 ILCS 5/6-21 (2006). Second, dram shop cases in which courts have not applied the exclusion involve a separate negligent action performed by an agent of the insured *after* the furnishing of alcohol. *Penn-America Ins. v. Peccadillos Inc.*, 27 A.3d 259 (Pa. Super. Ct. 2011) (en banc); *Dennis v. Finish Line, Inc.*, 636 So. 2d 944 (La. App. 1994). Phusion's act of adding stimulants to Four Loko occurred before the product was ever consumed.

We find that *Colony Ins. Co. v. Events Plus, Inc.*, 585 F. Supp. 2d 1148 (D. Ariz. 2008) is particularly instructive for Phusion's circumstances. The *Colony* court found that an insurer did not have a duty to defend against a negligence action in which the insured hosted a "Flugtag" event where Red Bull and vodka

cocktails were served. *Id*. at 1158. The insured was one of a number of entities that organized, hosted, and supervised the event, but the complaint did not include any allegations that the insured directly served any alcohol. *Id.* at 1150. The underlying lawsuit arose when Mr. Fahlman, who attended the event, was "served numerous Red Bull/Vodka cocktails … became severely intoxicated, proceeded to leave the event by car, drove his Ford Mustang through a red light at the intersection of Apache Boulevard and Price Road, and collided with a motorcycle driven by Officer Targosz." *Id.* The insured's commercial general liability policy included a liquor liability exclusion verbatim to the language used in Phusion's policies. The court reviewed the allegations in the underlying complaint to determine if there was "a single allegation of tortious conduct that is divorced from the serving of alcohol." *Id.* at 1155. It concluded that there was not. *Id.* at 1156. The court stated that the secondary negligence claims such as negligent hiring and supervision were not distinct from the furnishing of alcohol, "but were, in fact, inextricably intertwined." *Id.* at 1155. Similar to *Northbrook*, the court emphasized that to "allow the parties to render such exclusions essentially meaningless through artful pleadings [] would allow them to circumvent the terms and intent of the policy and its exclusions." *Id*.; *see also Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 983 (Ind. Ct. App. 2006) (creative pleadings cannot procure coverage when the immediate and efficient cause of the injury was precipitated by the service of alcohol). This Court is confident that Illinois would adopt the analysis applied in *Colony*.

Despite the fact that alcohol and stimulants are premixed in every can of Four Loko, Phusion argues that the underlying complaints are "stimulant liability cases," not liquor liability cases. The thrust of Phusion's argument is that its choice to add stimulants to its Four Loko product is an additional wrongdoing that amounts to a separate allegation outside of the Liquor Liability Exclusion, and is actually within the coverage of Liberty's insurance policies. Liberty contends that the Liquor Liability Exclusion should apply to Four Loko the same way that it applies to all other alcoholic beverages and the addition of stimulants is irrelevant in determining its duty to defend. We agree with Liberty.

The lack of discussion in *Colony* regarding the energy stimulating ingredients of Red Bull is also instructive for the issue of "stimulant liability." To make its Four Loko beverage, Phusion premixes malt liquor with some of the same stimulants found in Red Bull. Allegedly, the original formula of Four Loko contained the alcohol content equivalent to five or six 12-ounce cans of beer, the caffeine equivalent to two cups of coffee, guarana, taurine, wormwood (the active ingredient in absinthe), carbonation, sugar, and natural and artificial flavors. The Red Bull and vodka cocktails at issue in *Colony* were a mixture of an energy drink and vodka. 585 F. Supp. 2d at 1150. A can of a Red Bull energy drink contains stimulants such as caffeine, B-group vitamins, sucrose, glucose, and taurine. Red Bull, http://energydrink.redbull.com/ingredients-red-bull (last visited Nov. 13, 2013). The *Colony* court did not consider the effects of these stimulants in its decision that the liquor liability exclusion applied. Four Loko is arguably more potent and more intoxicating than Red Bull and vodka cocktails.

Additionally, because of the very nature of the Four Loko product, the stimulants and alcohol cannot be separated. The presence of energy stimulants in an alcoholic drink has no legal effect on the applicability of a liquor liability exclusion. The supply of alcohol, regardless of what it is mixed with, is the relevant factor to determine whether an insured caused or contributed to the intoxication of any person. While Phusion's choice of premixing energy stimulants and alcohol to make its Four Loko product might not have been a very good one, it does not amount to tortious conduct that is divorced from the serving of alcohol.

The secondary negligence claims of the four underlying actions are nothing more than rephrasings, or artful pleadings that are not wholly independent from Phusion's furnishing of alcohol. The *McCarroll* and *Rivera* complaints support this conclusion. The plaintiffs in the two cases were passengers in the same car involved in the same drunk driving accident. However, the *Rivera* complaint has five claims against Phusion, including the claims of failure to warn and a violation of FDUTPA, which are more tenuous to the incident. While the *McCarroll* complaint only has two causes of action, each claim has numerous theories of how Phusion breached its standard of care. Even though the cases arose out of the same incident, the allegations are very different. To conclude that Liberty has a duty to defend one case and not the other would be absurd. Likewise, to allow these claims to stretch into allegations that are within Liberty's coverage would circumvent the intent of the Liquor Liability Exclusion in its policies. In each of the four underlying complaints, none of the claims against Phusion are distinct from Phusion's act of furnishing alcohol. Therefore,

Liberty does not have the duty to defend Phusion in the *Keiran, McCarroll, Rivera*, or *Rupp* lawsuits.

If Phusion wanted insurance coverage for incidents that occurred after someone imbibed its alcoholic concoctions, the time to make that decision was when it purchased insurance. Phusion could have requested additional liquor liability coverage and paid additional premiums for it. They did not.

## CONCLUSION

The Liquor Liability Exclusions in the Netherlands and Indiana policies are unambiguous and apply to Phusion. This Court holds that the allegations of simple negligence raised by the plaintiffs in the underlying complaints are not sufficiently independent from the allegations that Phusion caused or contributed to the intoxication of any person. The Netherlands Insurance Company and Indiana Insurance Company do not have the duty to defend Phusion against the four underlying lawsuits. The district court's opinion is AFFIRMED.