**Christine Mary GREIF and Robert Charles Greif, Plaintiffs,**

v.

**ANHEUSER–BUSCH COMPANIES, INC., Anheuser–Busch Incorporated, Miller Brewing Company, Adolph Coors Company, and Coors Brewing Company, Defendants.**

No. 3:00CV995 (GLG).

United States District Court, D. Connecticut.

Sept. 11, 2000.

Christine Mary Greif, pro se, Robert Charles Greif, pro se, Avon, CT, for Plaintiffs.

David B. Zabel, Cohen & Wolf, P.C., Bridgeport, CT, for Defendants Anheuser–Busch Co., Inc. and Anheuser–Busch, Inc.

Benjamin A. Solnit, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, Michael T. McCormack, Tyler, Cooper & Alcorn, Hartford, for Defendant Miller Brewing Co.

William H. Bright, Jr., Eric Watt Wiechmann, Cummings & Lockwood, Hartford, CT, for Defendants Adolph Coors Co. and Coors Brewing Co.

## MEMORANDUM DECISION

GOETTEL, District Judge.

The defendants move to dismiss the plaintiffs' action brought *pro se*[1] in Connecticut State Court and removed to the federal court by them on diversity grounds.

This action results from a terrible tragedy. According to the complaint, Mrs. Greif was stopped on a bicycle on the edge of Route 4 in Farmington, Connecticut when a motor vehicle driven by Elmer Michaud crossed over the roadway and struck her, causing serious injuries to her. The complaint alleges that Michaud had consumed the defendants' "products" and was under their influence. The "products" in question are beer and beer-type beverages (e.g., light beer, malt liquor, and other alcoholic beverages).[2] The complaint does not specify which of the three brewing company defendants' products Michaud had consumed before driving, and it would appear that they have been selected as three of the largest manufacturers of beer products in the United States.[3] The complaint alleges that Mr. Michaud was driving while intoxicated and was charged with a violation of Connecticut General Statutes § 14–227.[4] The plaintiffs' complaint is brought under Connecticut's Products Liability Act, Conn. Gen.Stat. §§ 52–572m–r. Plaintiffs maintain that the beer was defective because it contained alcohol which can lead to intoxication and thereby impair the consumer's ability to drive, and that the manufacturers have breached warranties made to consumers. The complaint also alleges that the defendants have failed to warn about the dangers of drinking their products and have made misrepresentations about them. (The alleged misrepresentations are not

1. While the plaintiffs are *pro se*, Robert Charles Greif is an attorney admitted to practice in Connecticut. His wife, Christine Mary Greif, was at the time of the incident giving rise to this case, employed by the University of Connecticut School of Law. The papers are quite professional as to form.

2. Beer is divided into two major categories: ales and lager. The yeast used in fermenting determines the difference between the two. Marty Nachel, *Beer* (visited September 6, 2000) <http://encarta.msn.com> at 5. Sake made in Japan is considered a beer since it is made from fermented rice but it is clear in color and tastes and looks more like wine than beer, being approximately fifteen percent alcohol. *Id.* at 8, 517 A.2d 624.

3. In 1995, there were 880 breweries in the United States, although many of them are owned by a handful of major companies. Recently local micro-breweries have become more in vogue. Nachel, *supra* note 2, at 1 & 10. Two of the defendants move to dismiss arguing that they are merely the parent corporations of the brewers and do not do business in Connecticut. In light of our ultimate decision, that issue need not be addressed.

4. Defendants' papers indicate that Michaud was found guilty of assault in the second degree with a motor vehicle and served two years in prison. Defendants' papers also indicate that the plaintiffs filed a civil suit against him for damages but do not indicate the status of that suit. We suspect that it is still pending and that Mr. Michaud may be judgment proof or close to it.

detailed but appear to be a general claim that "their products were safe, free of defects and suitable for the purposes intended." Compl. ¶ 24.)

Beer has been brewed for tens of thousands of years, although the method of making beer in ancient times varied greatly from place to place.[5] Beer is brewed by fermentation in which microscopic fungi known as yeast consume sugars in the grain, converting them to alcohol and carbon dioxide gas. Typically, a beer contains from two to six percent alcohol. Nachel, *supra* note 2, at 1. There is now merchandised a nonalcoholic "beer", but whether it can be accurately called "beer" is another matter.

While beer is a relatively mild form of alcoholic beverage, the complaint alleges, and everyone knows, that anyone who consumes enough of any product containing alcohol will become, to some degree, inebriated. Indeed, the complaint alleges that the defendants should have known that some consumers like Mr. Michaud would drink to excess and that intoxication impairs motor skills including driving. According to paragraph 22 of the complaint, the defendants should reduce the intoxicating effects of the products by lowering or removing the alcohol content. In effect, the complaint alleges that the defendants produced a product that can and does have anti-social effects and should be banned or, at the least, the manufacturer should be responsible for all ultimate misuse of the product by consumers. This essentially is a call for the return of Prohibition, the "great experiment" which not only failed seventy years ago but, according to some, actually led to a substantial increase in the drinking of alcoholic beverages.

At first blush, the theories of the complaint are so bizarre that one is tempted not to treat them seriously. However, similar types of suits have been brought in recent years concerning other products

with at least some degree of success. For example, suits against gun manufacturers brought by the estates of persons killed by criminals using legally manufactured guns (or brought by those who had supplied medical assistance to those injured in such events) are a recent phenomenon. *See, e.g., Hamilton v. Beretta U.S.A. Corp.,* Nos. 99–7753, 7785, 7787, 2000 WL 1160699 (2d Cir. August 16, 2000) (certifying certain questions to the New York Court of Appeals). Such cases, however, are based upon a claim that the manufacturers had a duty to exercise reasonable care in the marketing and distribution of the hand guns they manufactured. No such claim is made here since there is no claim that the defendants sold their product directly to Michaud, simply that they allegedly manufactured products ultimately consumed by him.

 There is of course no way in which a product containing alcohol can be marketed so as to prevent the type of criminal conduct engaged in by Michaud in this case. Moreover, the Connecticut Products Liability Act, on which the plaintiffs rely, requires proof that the product is unreasonably dangerous, i.e., that it

> must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*Potter v. Chicago Pneumatic Tool Co.,* 241 Conn. 199, 214–215, 694 A.2d 1319 (1997)(quoting Restatement (Second) of Torts, § 402A cmt. i). That comment addresses and rejects the very design defect claim made in this case, stating "Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics . . . ." A beverage is not unreasonably dangerous because it contains alcohol,

---

5. Mesopotamia used wheat as the basic ingredient; Egypt used barley; millet and sorghum were used in other parts of Africa; rice in Asia and corn in the Americas. Nachel, *supra* note 2, at 1. Similar variations may exist today.

providing that its presence is disclosed.[6] The Connecticut courts have consistently held that the potential risks of alcohol intoxication and drunk driving are matters of common knowledge. *See, e.g., State v. Katz,* 122 Conn. 439, 189 A. 606 (1937); *State v. Shine,* 193 Conn. 632, 479 A.2d 218 (1984); *Jolly, Inc. v. Zoning Bd. of Appeals,* 237 Conn. 184, 676 A.2d 831 (1996). Consumers expect there to be alcohol in beer and should anticipate that, if they have more than one or two, they will experience a degree of intoxication. The product was not, therefore, defective.[7]

Turning to the plaintiffs' failure to warn claim, it too mimics another new style of case. In recent tobacco litigations, plaintiffs have claimed that, while they were aware of the serious health risks involved in smoking (indeed, they could hardly deny it, since the Surgeon General's warning have been on cigarette packages for many years), the manufacturers knew of dangerous aspects of their products beyond those commonly understood and therefore were responsible for the smokers' continued addiction. Such cases were not generally successful until a recent huge Florida class action verdict which has now been removed to federal court. *Engle v. R.J. Reynolds Tobacco Co.,* No. 00–CV–2641 (removal on July 24, 2000 following July 14, 2000 jury verdict awarding $145 billion punitive damages in state court, No. 94–8273–CA–22 (Fla.Cir.Ct.)). Plaintiffs maintain that while there may have been a common understanding about the risks of consuming alcohol and driving, recent studies have indicated the dangers to be greater than had previously been understood and that therefore the existing case law should be ignored. Plaintiffs cite no new breakthrough in the study of alcoholic beverages which could produce such a change. Plaintiffs rely on *Burton v. R.J. Reynolds Tobacco Co.,* 884 F.Supp. 1515 (D.Kan.1995), but that case rests on the fact that the plaintiff began smoking some sixty years ago, so that, the Court held, the state of knowledge concerning smoking's dangers were not as well known. (Perhaps they were not, but even in the thirties, cigarettes were referred to as "coffin nails.")

■ Among other things, the plaintiffs claim the defendants failed to warn consumers and the general public that consumption level effects of products differ from person to person, so that an amount which may not cause inebriation in one consumer might do so to another. We doubt that there is any practical way of conveying such a warning in a meaningful way, but there is clearly no claim that any doubts in that regard were the proximate cause of Mr. Michaud's drunkenness. Connecticut General Statute § 14–227 makes it illegal for a driver to operate a motor vehicle with a blood alcohol content level greater than one-tenth of one percent. Drivers in Connecticut are charged with knowledge of this law. Mr. Michaud violated this criminal statute with disastrous consequences and as a result deserved imprisonment. The Connecticut courts held in *Dumont v. Commissioner of Motor Vehicles,* 48 Conn.App. 635, 642–43, 712 A.2d 427 (1998), *cert. denied,* 245 Conn. 917, 717 A.2d 234 (1998):

> Those who drink a substantial amount of alcohol within a relatively short period of time are given clear warning that to avoid possible criminal behavior they must refrain from driving.... Considering also today's heightened level of public awareness regarding the problem, we cannot believe that any person who drives after drinking would be unaware

---

**6.** There are many products besides beverages such as beer which contain alcohol, e.g., mouthwashes, cough medicine, etc. Excessive use of those products can produce intoxication.

**7.** Plaintiffs argue that the Connecticut Products Liability Act prohibits the granting of a motion to dismiss since a claim of failure to warn requires that evidence be produced. We find that interpretation of the language of the Act to be extreme and unreasonable. *See* Conn. Gen.Stat. § 52–572q.

of the possibility that his blood-alcohol level might equal or exceed the statutory standard. . . .

*Id.* (quoting *Burg v. Municipal Ct. for Santa Clara Judicial Dist.*, 35 Cal.3d 257, 271–72, 198 Cal.Rptr. 145, 673 P.2d 732 (1983) (citations omitted; internal quotation marks omitted)). As Comment j to the Restatement (Second) of Torts § 402A, cited above, states:

> But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example . . . .

As if the foregoing were not enough, pursuant to the Alcohol Beverage Labeling Act of 1988, 27 U.S.C. §§ 213 *et seq.*, every bottle or can of beer brewed and sold in the United States contains a federally mandated warning that "consumption of alcohol beverages impairs your ability to drive a car . . . ." 27 U.S.C. § 215(a). That warning was required not because of newly discovered evidence of the effects of alcohol but rather as a "reminder" of such hazards. 27 U.S.C. § 213.

▮ Plaintiffs also make a claim of misrepresentation and breach of warranty concerning the safety of defendants' product through their advertising and sponsorship of athletic events.[8] *See, e.g.,* Compl. ¶¶ 24, 25, 29. This and other aspects of that claim concern consumers of the product. At least as it refers to this particular accident, Michaud was the consumer, and a third party cannot normally recover for misrepresentations or warranties made to another party. A breach of warranty claim under Connecticut law must be made by either the buyer, the user, or parties in the normal chain of distribution. *Garth-*

*wait v. Burgio,* 153 Conn. 284, 289, 216 A.2d 189 (1965).

In the final analysis, the plaintiffs cannot prevail against the defendants, because the sole proximate cause of their injuries was the conduct of the drunken driver whose excessive use of alcoholic beverages intoxicated him but who nevertheless drove in a dangerous condition causing injury to the plaintiffs. While the dram shop laws under appropriate circumstances can create liability on the part of those who serve alcoholic beverages, a claim cannot be made against the manufacturer "for the reason that the subsequent injury has been held to have been proximately caused by the intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury." *Quinnett v. Newman,* 213 Conn. 343, 345–46, 568 A.2d 786 (1990)(citing *Boehm v. Kish,* 201 Conn. 385, 517 A.2d 624 (1986)).

Consequently we **GRANT** the motion to dismiss **(Doc. No. 18)**. Since we do so, it is unnecessary to consider defendants' additional arguments that plaintiff Robert Charles Greif's emotional distress claim is unfounded because he did not view the accident. The claim of loss of consortium (in the second count) also fails because the predicate claim is dismissed.

---

8. While it may be that the defendants' method of merchandising their product, like the tobacco companies which used a cartoon character attractive to children, should be cur-
tailed, any failures in that regard are not alleged and could not have been a cause of Michaud's excessive consumption.