# Illinois Official Reports

## Appellate Court

---

***Phusion Projects, Inc. v. Selective Insurance Co. of South Carolina*,**
**2015 IL App (1st) 150172**

---

| | |
|---|---|
| Appellate Court Caption | PHUSION PROJECTS, INC., and PHUSION PROJECTS, LLC, Plaintiffs-Appellants, v. SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-0172 |
| Filed | December 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-10322; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Reed Smith LLP, of Chicago (John S. Vishneski III, Stanley C. Nardoni, and Jessica E. Brown, of counsel), for appellants.<br><br>Hinshaw & Culbertson LLP (Daniel K. Ryan, Dana A. Rice, and William P. Hardy, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.<br>Justices Gordon and Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiffs Phusion Projects, Inc., and Phusion Projects, LLC (collectively Phusion), brought an action for declaratory judgment against its commercial liability insurer, Selective Insurance Company of South Carolina (Selective). Phusion sought a declaration in the circuit court of Cook County that its insurance policy required Selective to defend and indemnify Phusion in six underlying lawsuits (underlying lawsuits). The underlying lawsuits generally alleged that the consumption of "Four Loko," an alcoholic beverage manufactured by Phusion, by certain individuals caused or contributed to the injuries they sustained. In a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), Selective claimed that it was not required to defend Phusion because the insurance policy contained a liquor liability exclusion. According to that exclusion, Selective was not required to defend or indemnify Phusion against any causes of action wherein it was alleged Phusion may be held liable for bodily injury by reason of causing or contributing to the intoxication of any person. The circuit court dismissed Phusion's complaint, finding Selective had no duty to defend or indemnify Phusion based on the unambiguous language of the exclusion. Phusion now appeals arguing Selective has a duty to defend because the six underlying lawsuits do not fall within the liquor liability exclusion. For the reasons that follow, we affirm.

¶ 2                            I. BACKGROUND
¶ 3                            A. The Parties
¶ 4        Phusion is the manufacturer of the alcoholic beverage "Four Loko," which is sold through independent distributors. Four Loko is a fruit-flavored malt beverage that is sold in 23.5 ounce cans. Each can of Four Loko is 12% alcohol by volume. From August or September 2008 to November 2010, Four Loko contained caffeine, taurine, and guarana.

¶ 5        Selective is an insurer that provided coverage to Phusion, as the named insured, under a commercial general liability policy and a commercial umbrella coverage policy (insurance policy).[1]

¶ 6                            B. The Insurance Policy
¶ 7        Selective issued the insurance policy to Phusion for the period effective May 6, 2009 through May 6, 2010. The policy states, in pertinent part, that Selective "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. *** However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply ***." The policy defined the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulted from any of these at any time." The policy also contained a "liquor liability" exclusion, which provided that the insurance did not apply to:

---

[1]Frank A. Crissie and A.F. Crissie & Co., Ltd. (Crissie defendants), Phusion's broker who sold the insurance policy at issue, were also named in Phusion's complaint; however, the Crissie defendants, and the counts relating to them, were subsequently voluntarily dismissed with prejudice. Thus, the Crissie defendants are not parties to this appeal.

" '*Bodily injury*' or 'property damage' *for which any insured may be held liable by reason of*:

   (1) *Causing or contributing to the intoxication of any person*;

   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of *manufacturing*, distributing, selling, serving or furnishing alcoholic beverages." (Emphases added.)

¶ 8                               C. Procedural History

¶ 9                             1. The Underlying Lawsuits[2]

¶ 10                              a. The Aguirre Complaint

¶ 11      The first lawsuit involved Marlene Aguirre (Aguirre), who was struck and killed by a train. The Aguirre complaint alleged that after consuming a quantity of Four Loko, Aguirre was intoxicated and began to exhibit unusual and dangerous behavior. Aguirre, "in the state of mind induced by consuming Four Loko, decided to 'moon' the eastbound Amtrak train" and, in doing so, was struck and killed. It was further alleged that "[h]ad Marlene Aguirre only consumed alcohol, and not Four Loko, she would not have 'mooned' the Amtrak train, which caused her death." But, "due to Four Loko's high caffeine content, and the presence of the stimulants guarana, taurine, and wormwood, she acted erratic, irresponsible, careless and with a defiant disregard for danger or consequences." The complaint included two claims against Phusion; a "Negligence/Products Liability" claim and a "Strict Liability/Products Liability" claim.

¶ 12                            b. The Frank-Adkins Complaint

¶ 13      The second lawsuit involved Donalyn Frank (Frank) who was killed in a motor vehicle accident caused by Daniel Rocca (Rocca) who drove recklessly after drinking Four Loko. Frank-Adkins alleged that Rocca became "severely impaired by intoxication" and was driving carelessly, aggressively, and recklessly at excessive speeds when he collided with the back of Frank's vehicle. The complaint further alleged that each 23.5 ounce can of Four Loko contained 12% alcohol by volume, 135 milligrams of caffeine, as well as guarana, taurine, and wormwood. According to the complaint, by combining these ingredients Phusion "intended for the stimulants and other ingredients to mask the intoxicating effects of the significant

---

[2]Four of the underlying lawsuits were attached as exhibits to Phusion's initial complaint. This complaint was subsequently amended several times (including to add two more underlying lawsuits) and did not thereafter attach the underlying complaints as exhibits. Selective, however, attached the two missing underlying complaints to its reply to the section 2-615 motion to dismiss. Because this matter is on review of a section 2-615 motion, we may consider the facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). Although the underlying complaints were not attached as exhibits to the operative pleading, we will take judicial notice of them as matters of public record. See *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 20 (taking judicial notice of an underlying action).

amount of alcohol contained in each Four Loko." The complaint included 6 claims with 12 counts total against Phusion for negligence, negligent manufacturing, negligent failure to warn claims, negligent marketing, negligent labeling, and strict liability.

### c. The Kellis Complaint

The Kellis complaint involved Joe Noah, Jr. (Noah), who was a passenger in a vehicle operated by David Deaton (Deaton) when it collided with a tree and Noah was killed. The complaint alleged Deaton consumed two 23.5-ounce cans of Four Loko in four hours immediately prior to driving his motor vehicle into a tree. According to the complaint, Four Loko contained "a dangerous combination of alcohol and stimulants, namely taurine, guarine [*sic*], and caffeine." The Kellis complaint includes one claim against Phusion for "negligent design, manufacture, testing, promotion, distribution [and] failure to warn."

### d. The Mathews Complaint

The fourth lawsuit involved Jewleon Bruce (Bruce), who died of acute alcohol poisoning after consuming cans of Four Loko and hard liquor. The Mathews complaint alleged Four Loko was "not reasonably safe and therefore defective as designed and/or formulated as the caffeine and energy enhancers masked and distorted the effects of the high alcohol content to cause consumers to continue to drink beyond safe and normal limits, and to suffer injuries, including alcohol sickness, poisoning, injuries, and death." The complaint contained two counts against Phusion, including a Washington State Consumer Protection Act claim and a product liability claim.

### e. The Marston Complaint

The Marston complaint was premised on the same set of facts as the Frank-Adkins complaint. The Marston complaint alleged that after consuming Four Loko, Rocca became intoxicated, drove recklessly, and caused a vehicle crash that severely injured Gail Marston (Marston) resulting in the amputation of her leg. The complaint set forth two counts each against Phusion for negligence, negligent failure to warn, and strict liability.

### f. The McGuffie Complaint

The McGuffie complaint alleged that after consuming numerous other alcoholic beverages and a can of Four Loko, Sean Walrath became intoxicated, drove a motor vehicle, and caused an automobile accident wherein Richard McGuffie (McGuffie) was injured. The complaint further alleged that McGuffie's injuries were a direct and proximate result of Phusion's negligent conduct in manufacturing Four Loko with "chemicals, including caffeine, that masked the feeling of intoxication." The complaint consisted of two counts against Phusion; a negligence claim and "product defect" claim.

### 2. The Declaratory Judgment Action

In 2013, Phusion filed its initial complaint for declaratory judgment against Selective in the circuit court of Cook County. The complaint alleged four lawsuits had been filed against Phusion (Aguirre, Frank-Adkins, Kellis, and Mathews) and that Selective had declined to tender a defense to those lawsuits. Phusion sought a declaration from the circuit court that

Selective had a duty to defend and indemnify it in those actions. Attached as exhibits to the complaint were the four underlying lawsuits as well as the insurance policies.

¶ 24 On January 10, 2014, Phusion was granted leave to file its first amended complaint which added, in pertinent part, facts regarding defendants' conduct and two more underlying lawsuits (Marston and McGuffie). The first amended complaint failed to attach as exhibits the complaints from the six underlying lawsuits. Thereafter, Phusion was granted leave to file a second amended complaint, which also did not include the complaints from the six underlying lawsuits.

¶ 25 On March 31, 2014, with leave of court, Phusion filed a third amended complaint which alleged five counts (I through V) against the Crissie defendants and two counts against Selective for violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2014)) (count VI) and declaratory judgment (count VII). Subsequent to the briefing of the motion to dismiss, the Crissie defendants were voluntarily dismissed with prejudice along with counts I through VI. Count VII of the third amended complaint, the only count pertinent to this appeal, sought a declaratory judgment that Selective owed a duty to defend and indemnify for the Selective lawsuits. Phusion alleged it tendered the underlying lawsuits to Selective for coverage and Selective disputed its obligation to defend and indemnify Phusion under the insurance policy for these lawsuits. Phusion asserted an actual controversy existed between the parties and it was entitled to a declaration that Selective is obligated to defend and indemnify Phusion pursuant to the insurance policy.

¶ 26                    a. Selective's Motion to Dismiss

¶ 27 On June 2, 2014, Selective filed a motion to dismiss the third amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)).[3] Selective argued the declaratory judgment count must be dismissed because the insurance policy included a liquor liability exclusion. According to Selective, the liquor liability exclusion unambiguously precluded claims of bodily injury for which Phusion may be held liable by reason of causing or contributing to the intoxication of any person. Selective maintained that four of the underlying lawsuits (Aguirre, Frank-Adkins, Kellis, and Mathews) "allege[d] that Four Loko caused or contributed to intoxication that was causally related to the decedents' deaths." Thus, because each of these underlying lawsuits alleged bodily injury caused by intoxication arising from the ingestion of Four Loko, the liquor liability exclusion operated to bar coverage under the insurance policy. In support of its argument, Selective noted that a federal district court recently considered an identical liquor liability exclusion and found it had no duty to defend based on the exclusion, citing *Netherlands Insurance Co. v. Phusion Projects, Inc.*, No. 11 C 1253, 2012 WL 123921 (N.D. Ill. Jan. 17, 2012).

¶ 28 In response, Phusion argued that Selective failed to establish coverage was precluded under the insurance policy due to the terms of the liquor liability exclusion. Although it acknowledged that two of the underlying complaints were not "on file with this Court,"

---

[3]Because Phusion voluntarily dismissed all other counts after the motion to dismiss was fully briefed, we only recount the arguments related to the remaining declaratory judgment count against Selective. We further note that Selective did not assert under which subsection of the Code the motion to dismiss was being brought. Based on its contents, it is apparent that it was a section 2-615(b) motion to dismiss (735 ILCS 5/2-615(b) (West 2014)).

Phusion contended that Selective's motion to dismiss must fail because it did not address whether the allegations of the Marston and McGuffie complaints fell within the liquor liability exclusion. Relying on out-of-state case law, Phusion next argued that the initial four underlying lawsuits are not excluded from coverage because the liquor liability exclusion applied to claims of negligent provision of alcohol, not allegations distinct from the negligent provision of alcohol. In addition, Phusion asserted that the underlying lawsuits were not based on liquor liability, but were based on "stimulant liability." Phusion pointed to the allegations of the underlying lawsuits which asserted that Phusion was liable for adulterating its beverages with caffeine, guarana and taurine. According to Phusion, it was the addition of these stimulants that operated to desensitize the consumers of Four Loko to the symptoms of intoxication and caused them to act recklessly.

¶ 29    Regarding the *Netherlands* case, Phusion argued that the Seventh Circuit's subsequent determination (*Netherlands Insurance Co. v. Phusion Projects, Inc.*, 737 F.3d 1174 (7th Cir. 2013)) was not dispositive where the instant matter involved different parties, insurance policies, and claims. Phusion asserted that the Seventh Circuit erred "by refusing to apply Illinois' sole proximate cause rule, which holds that 'in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy.' " According to Phusion, the underlying lawsuits identify Four Loko's stimulants as the proximate cause of the injuries and thus fall within the insurance policy.

¶ 30    In reply, Selective argued the liquor liability exclusion equally applied to the Marston and McGuffie complaints where both complaints alleged that the respective defendants became intoxicated after consuming Four Loko and caused the plaintiffs' bodily injuries. Selective further relied on the Seventh Circuit's determination in *Netherlands*, which recognized that " 'the presence of energy stimulants in an alcoholic drink has no legal effect on the applicability of a liquor liability exclusion.' " In addition, Selective maintained that the underlying claims against Phusion were not " 'wholly independent' of intoxication–but rather are inextricably intertwined with it." Selective attached the Marston and McGuffie complaints to its reply.[4]

¶ 31                    b. Phusion's Voluntary Dismissal of Other Defendants

¶ 32    On October 2, 2014, after the motion to dismiss was fully briefed, the circuit court granted Phusion's motion to voluntarily dismiss the Crissie defendants and counts I through VI of the third amended complaint with prejudice. Only count VII, the declaratory judgment claim against Selective, remained. Phusion was also granted leave to file a "revised third amended complaint," which struck all but 18 paragraphs related to the declaratory judgment count against Selective. No file stamped copy of the revised third amended complaint is contained in the record.

¶ 33                    c. Ruling on the Motion to Dismiss

¶ 34    On December 16, 2014, the circuit court granted Selective's motion to dismiss with prejudice finding Selective did not have a duty to defend Phusion in the underlying lawsuits.

_____

[4] According to Selective's reply, the McGuffie complaint was dismissed in its entirety on November 15, 2012, prior to the filing of the declaratory action.

The court acknowledged that in order to determine whether Selective had a duty to defend, it must compare the allegations of the underlying complaints with the insurance policy. The court noted, however, that the underlying complaints were not attached to Phusion's complaint and stated it would "address the allegations in the [underlying] [l]awsuits based on the descriptions provided by the parties in this fully briefed Motion." The circuit court found that each of the underlying lawsuits contained allegations of bodily injury stemming from intoxication following the consumption of Four Loko. The court further found that, based on the terms of the insurance policy and the liquor liability exclusion, "it [is] clear that coverage is excluded when there are claims that an individual sustained bodily injury caused by intoxication." The court concluded that the plain language of the liquor liability exclusion precluded coverage of the underlying lawsuits and Selective had no duty to defend or indemnify Phusion for these lawsuits. This appeal followed.

¶ 35                                II. ANALYSIS

¶ 36        On appeal, Phusion makes numerous arguments regarding the inapplicability of the liquor liability exclusion to the claims of the underlying lawsuit. In its reply, however, Phusion concedes that "this appeal comes down to one issue: whether the six underlying product liability suits can properly be described as attempting to hold Phusion liable for 'causing or contributing to the intoxication' of persons (so as to fall within Selective's liquor liability exclusion) simply because they alleged Phusion manufactured the 'Four Loko' caffeinated alcoholic beverage." Despite this assertion, our review of the briefs reveals two issues on appeal: (1) whether the circuit court correctly determined that the liquor liability exclusion is unambiguous and (2) whether the circuit court properly concluded Selective had no duty to defend because the six underlying lawsuits set forth allegations that fell within the liquor liability exclusion. We address each issue in turn.

¶ 37                            A. Standard of Review

¶ 38        A motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. *Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549, ¶ 15; *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). When ruling on a section 2-615 motion, the relevant question is whether the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 714 (2010). "We take as true all well-pleaded facts in the complaint, as well as any reasonable inferences arising from those facts." *Bartkowiak*, 2015 IL App (1st) 133549, ¶ 15. "In ruling on a section 2-615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *K. Miller Construction Co.*, 238 Ill. 2d at 291. A motion to dismiss should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Fuller's Car Wash, Inc. v. Liberty Mutual Insurance Co.*, 298 Ill. App. 3d 167, 170 (1998); *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). We review a section 2-615 dismissal *de novo. AMCO Insurance Co. v. Cincinnati Insurance Co.*, 2014 IL App (1st) 122856, ¶ 12.

The circuit court determined that Selective does not have a duty to defend based on the language of the insurance policy's liquor liability exclusion. We review the construction of the provisions of an insurance policy *de novo*, as it is a question of law. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). "A court's primary objective in construing the language of an insurance contract is to ascertain and give effect to the intent of the parties to the contract." *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 714. To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning. *Id.* Conversely, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy. *Id.* at 108-09. "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963 (2005). Courts, however, "should not strain to find ambiguity in an insurance policy where none exists." *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 715.

The Selective insurance policy liquor liability exclusion at issue states as follows:

"2. Exclusions

This insurance does not apply to:

* * *

c. Liquor Liability

'Bodily injury' or 'property damage' for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."[5]

Phusion argues that the liquor liability exclusion does not apply to manufacturers. According to Phusion, "the exclusion restricts its application to those in the liquor business to

---

[5]We note that the insurance policy also contains a document entitled "Amendment of Liquor Liability Exclusion." That document is identical to the liquor liability exclusion, except it states in greater detail the circumstances where the exclusion applies: "This exclusion applies only if you: (1) Manufacture, sell or distribute alcoholic beverages; (2) Serve or furnish alcoholic beverages for a charge whether or not such activity: (a) Requires a license; (b) Is for the purpose of financial gain or livelihood; or (3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity." The parties do not discuss the "Amendment of Liquor Liability Exclusion" in their briefs; accordingly, we limit our discussion to the liquor liability exclusion referenced above.

preserve host liquor liability coverage, not to encompass manufacturing." Phusion maintains that manufacturing alone does not cause or contribute to intoxication and, thus, the liquor liability exclusion does not apply.

¶ 43 To support its argument, Phusion cites numerous Liquor Control Act of 1934 (Dramshop Act) (235 ILCS 5/6-21 (West 2014)) and out-of-state cases for the proposition that the voluntary consumption of alcohol is the proximate cause of an injury rather than the manufacture. See *Charles v. Seigfried*, 165 Ill. 2d 482 (1995); *Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358 (S.D. Fla. 2001); *Greif v. Anheuser-Busch Cos.*, 114 F. Supp. 2d 100 (D. Conn. 2000); *Brown v. Miller Brewing Co.*, No. 1:12-cv-00605-REB, 2014 WL 201699 (D. Idaho Jan. 17, 2014); and *Morris v. Adolph Coors Co.*, 735 S.W.2d 578 (Tex. App. 1987). In making such an argument, Phusion essentially asks us to determine its ultimate liability in the underlying lawsuits. This we cannot do. "[T]he rule is well settled that, generally speaking, the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party, is to be determined by the allegations of the complaint in such action, and that the insurer's ultimate liability under the policy of insurance is not the criterion to be followed in determining whether or not there exists a duty to defend." *Palmer v. Sunberg*, 71 Ill. App. 2d 22, 28 (1966). In a declaratory judgment action, the construction of an insurance policy's language is "an issue of law, independent of the ultimate issues to be resolved in the underlying tort action." *SCR Medical Transportation Services, Inc. v. Browne*, 335 Ill. App. 3d 585, 591 (2002).

¶ 44 We agree with the circuit court that the language of the exclusion is clear and unambiguous. See *Netherlands Insurance Co.*, 737 F.3d at 1178 (finding an identical liquor liability exclusion to be "clear and unambiguous"). Subsection one provides that the insurance policy does not apply to claims of " 'Bodily injury' or 'property damage' for which any insured may be held liable by reason of: (1) Causing or contributing to the intoxication of any person."[6] According to its plain and ordinary meaning, the liquor liability exclusion applies to claims of bodily injury or property damage where Phusion may be held liable because it either caused or contributed to the intoxication of any person. The liquor liability exclusion applies specifically to those "in the business of manufacturing *** alcoholic beverages," and Phusion admits it is the manufacturer of alcoholic beverages. Thus, the unambiguous exclusion applies to Phusion provided the claims of the underlying lawsuits fall within subsection one.

¶ 45                                 C. Duty to Defend
¶ 46 In order to determine whether Selective has a duty to defend, we must compare the language of the liquor liability exclusion to the allegations of the underlying complaints. According to our supreme court, in a declaratory judgment action, "where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint[s] and compares those allegations to the relevant provisions of the insurance policy. [Citations.] If the facts alleged in the underlying complaint[s] fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. [Citation.]" *Pekin Insurance Co.*, 237 Ill. 2d at 455. "If the facts alleged in the underlying complaint[s] fall even potentially within the policy's coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent." *Uhlich Children's Advantage Network*,

_____

[6]Phusion concedes in its reply brief that subsections two and three of the exclusion do not apply.

398 Ill. App. 3d at 716. The allegations in the underlying complaints must be liberally construed in favor of the insured. *Outboard Marine Corp.*, 154 Ill. 2d at 125.

¶ 47 In Illinois, it is the insurer's burden to affirmatively demonstrate the applicability of an exclusion. *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 34. " 'Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer.' " *Id.* (quoting *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006)). "Where the insurer relies on a provision that it contends excludes coverage to reject a tender of defense, we review the applicability of the provision to ensure it is clear and free from doubt that the policy's exclusion prevents coverage." (Internal quotation marks omitted.) *Id.* (quoting *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560 (2000)). "An insurer has the right to limit coverage on a policy, and where an insurer has done so, a court must give effect to the plain language of the limitation, absent a conflict with the law." *Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.*, 252 Ill. App. 3d 96, 102 (1993).

¶ 48 Phusion first contends that Selective's duty to defend is supported by the allegations of the underlying lawsuits. Phusion bases this argument on what it calls the "sole and proximate cause rule." According to Phusion, intoxication was not the sole and proximate cause of the injuries asserted in the underlying lawsuits, thus, Selective has a duty to defend. Phusion argues that the underlying complaint also alleged "stimulant liability," that the stimulants added to Four Loko was another proximate cause of the injuries. Phusion maintains that because "alcohol intoxication" is not the sole proximate cause of the injuries in the underlying lawsuits, Selective has a duty to defend it against these claims. In support of its argument, Phusion relies on *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46 (1987) (*USF&G*), *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 97 (2000) (*Northbrook*), and *State Farm Fire & Casualty Co. v. Perez*, 387 Ill. App. 3d 549 (2008).

¶ 49 In response, Selective denies that there is such a "sole and proximate cause rule" and points out that Phusion does not dispute that the individuals in the underlying lawsuits were intoxicated and that their intoxication proximately caused the bodily injuries and deaths alleged.

¶ 50 Phusion derives its "sole and proximate cause rule" from this court's analysis in *USF&G*, which we note did not consider whether the insurer had a duty to defend. In that case, the reviewing court considered whether the insurer met its burden at trial of proving that the injuries at issue were caused solely by a proximate cause excluded under its insurance policy. *USF&G*, 152 Ill. App. 3d at 49. In that case, a child who was being transported in a station wagon operated by a daycare center employee was injured when a passenger door opened and the child fell from the moving vehicle. *Id.* at 47. The two-count complaint alleged two proximate causes of the child's injuries: (1) failure to provide sufficient and adequate supervision of the children and (2) failure to operate and maintain the station wagon properly. *Id.* There was no question that the insurance policy covered the liability resulting from the injuries proximately caused by the failure to provide sufficient and adequate supervision of the children. *Id.* at 48. The insurer, United States Fidelity & Guaranty Co., however, denied that its policy offered coverage for the child's injuries as a result of the use or operation of the station wagon based on a motor vehicle exclusion clause contained in the insurance policy. *Id.* The exclusion provided that the " 'insurance does not apply *** to bodily injury arising out of the

ownership, maintenance, operation [or] use of (1) any automobile *** owned or operated by *** any insured, or (2) any other automobile *** operated by any person in the course of his employment by an insured.' " *Id.*

¶ 51    On appeal, the insurer argued that this exclusion barred coverage because the child's injuries "resulted from the use or operation of the station wagon and because the injuries could not have occurred without the operation or use of the station wagon." *Id.* The reviewing court acknowledged that there may be more than one proximate cause of an injury and explained what Phusion calls the "sole proximate cause rule" as follows:

> "A proximate cause of an injury is any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury. [Citation.] If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy." *Id.*

The reviewing court held that the insurer did not meet its burden of proving that the child's injuries fell within the insurance policy exclusion. *Id.* at 49. Although the general jury verdict supported the conclusion that the proximate cause of the child's injuries was the failure to provide sufficient and adequate supervision, the record did not establish that the sole proximate cause of the child's injuries was the use, operation, or maintenance of the station wagon. *Id.*

¶ 52    In *Northbrook*, the Illinois Supreme Court interpreted the scope of an automobile exclusion in a commercial general liability policy to hold that an insurer had no duty to defend against "numerous lawsuits arising from the collision of a train with a school bus." *Northbrook*, 194 Ill. 2d at 97. Several students were killed and many others were injured. *Id.* At the time of the accident, one of the school districts' insurance policies stated it would " 'pay those sums that the insured becomes legally obliged to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.' " *Id.* The insurance policy, however, also contained an automobile exclusion which stated that the insurer would not cover losses for bodily injury or property damage " 'arising out of the ownership, maintenance, use or entrustment to others of any *** "auto" *** owned or operated *** to any insured.' " *Id.* at 98. The policy defined "auto" as " 'a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.' " *Id.*

¶ 53    The insurer, Northbrook, sought a declaratory judgment that it had no duty to defend the school districts against the students' lawsuits because the injuries arose out of the use or operation of a bus. *Id.* The trial court granted summary judgment in favor of Northbrook, but the appellate court reversed that judgment. *Id.* The appellate court specifically held "the students' lawsuits against the school districts adequately alleged that the injuries could have arisen from causes other than use or operation of the bus, such as failure of the school districts to adequately plan and inspect bus routes and warn bus drivers of potential hazards." *Id.*

¶ 54    To the contrary, our supreme court found Northbrook had no duty to defend, holding:

> "Here, the allegations of the underlying complaints utterly fail to state facts which either actually or potentially bring the cases within the policy's coverage. The policy

excludes injuries arising from the school districts' use or operation of a motor vehicle. Allegations that the school districts inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes are nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle. Contrary to the appellate court's holding, the students' complaints failed to allege that the injuries arose from events 'wholly independent of any negligent operation of the bus.' [Citation.]" *Id.* at 98-99.

¶ 55    Similarly, in *Perez*, the reviewing court considered the applicability of a motor vehicle exclusion included in a homeowner's insurance policy. In that case, the defendant Perez was injured while riding in a vehicle driven by Oscar Baeza (Baeza) when he lost control of the vehicle and struck a tree. *Perez*, 387 Ill. App. 3d at 550. Perez filed a two-count complaint against Baeza alleging he (1) negligently operated the vehicle while under the influence of alcohol and (2) negligently modified or altered the seats in the vehicle and failed to warn his passengers of the dangers and defects of the modified seats and safety restraint system. *Id.* The insurer filed a complaint for declaratory judgment seeking a declaration that the homeowner's policy did not provide coverage to Baeza and that it had no duty to defend or indemnify Baeza in the underlying lawsuit. *Id.* at 550-51. In support, the insurer relied on the homeowner's insurance policy's motor vehicle exclusion which provided, in pertinent part, that " '[c]overage *** do[es] not apply to *** bodily injury or property damage arising out of the ownership, maintenance, use, loading and unloading of *** a motor vehicle owned or operated by or rented or loaned to any insured.' " *Id.* at 553.

¶ 56    The circuit court granted the insurer's motion for judgment on the pleadings and denied Perez's motion for summary judgment, finding that the injuries arose out of the use and ownership of Baeza's automobile and, thus, fell within the motor vehicle exclusion. *Id.* at 551.

¶ 57    On appeal, Perez argued that the exclusion was inapplicable because the negligent modification claim did not allege bodily injury arising out of the ownership, maintenance, use, loading or unloading of Baeza's vehicle. *Id.* at 554. According to Perez, these allegations were " 'wholly independent' from the allegation that Baeza negligently operated the vehicle." *Id.* Perez further argued that "while the negligent operation claim (count I) against Baeza was excluded under the policy, it did not serve to void the included coverage of the negligent modification claim (count II) because Perez's injuries were not caused solely by Baeza's negligent operation of the car." *Id.* at 558.

¶ 58    The reviewing court concluded that (1) "the negligent modification claim was only a rephrasing of the fact that Perez's injuries arose out of Baeza's use of the car and, thus, was not wholly independent of the negligent operation of the car" (*id.* at 556-57) and (2) "[n]o matter how negligent Baeza was in modifying the seats and seat belt restraint system, the modifications could not, on their own, proximately cause injuries to Perez without the actual operation of the car" (*id.* at 560). Thus, "the negligent modification claim in Perez's underlying complaint was not a covered cause because it was based solely on Baeza's alleged negligent use and operation of the car" and the insurer had no duty to defend. *Id.*

¶ 59    Based on the holdings of *USF&G*, *Northbrook*, and *Perez*, we conclude that in order for the underlying lawsuits at issue here to fall within the insurance policy and, thus, outside the liquor liability exclusion, each of the complaints must allege facts that are independent from the event that led to the injury. See *Northbrook*, 194 Ill. 2d at 98-99. More specifically, the underlying

complaints must allege facts that are independent of "causing or contributing to the intoxication of any person."

¶ 60    According to Phusion, the underlying lawsuits do not fall under the liquor liability exclusion because they allege another proximate cause of the injuries, "stimulant liability." Specifically, Phusion asserts that the underlying lawsuits additionally alleged that it was the incorporation of stimulants to Four Loko that was unreasonably dangerous and caused injuries that would not have been sustained due to alcohol consumption alone.

¶ 61    Although not binding on this court, we note that the Seventh Circuit rejected the same arguments made here by Phusion in *Netherlands*. In that case, Phusion purchased a commercial general liability insurance policy from the Netherlands Insurance Company (Netherlands) and an umbrella liability insurance policy from Indiana Insurance Company (Indiana). *Netherlands*, 737 F.3d at 1175. Both insurance companies were members of the Liberty Mutual Group and were referred to collectively as " 'Liberty' " within the opinion. *Id.* The Netherlands and Indiana policies included a liquor liability provision that excluded coverage for "bodily injury or property damage when Phusion 'may be held liable by reason of: (1) causing or contributing to the intoxication of any person.' " *Id.* Five plaintiffs sued Phusion in separate state court actions alleging that the consumption of Four Loko caused their injury, in whole or in part. *Id.* After Phusion notified Liberty of the suits, Liberty filed in federal court for a declaratory judgment regarding the scope of its insurance coverage. *Id.* Phusion filed a counterclaim contending the liquor liability exclusion did not apply and, therefore, Liberty had a duty to defend and indemnify. *Id.*

¶ 62    The first lawsuit involved a man who accidentally shot and killed himself when he became intoxicated after drinking Four Loko. *Id.* The second lawsuit alleged the plaintiff was injured as a passenger in a motor vehicle accident caused by a friend who became intoxicated after consuming Four Loko. *Id.* In a third lawsuit, another passenger was injured in the same motor vehicle accident as the plaintiff in the second lawsuit and alleged similar facts. *Id.* The fourth lawsuit alleged a man died after experiencing "some sort of paranoid episode after drinking Four Loko." *Id.* The fifth lawsuit involved a plaintiff who "awoke with heart troubles after drinking Four Loko the night before." *Id.* According to the Seventh Circuit, the plaintiff in the fifth lawsuit "did not allege an injury arising from intoxication, but alleged that Four Loko was a dangerous product that led to his heart condition." *Id.*

¶ 63    Both parties moved for summary judgment. *Id.* The district court found that the liquor liability exclusion was unambiguous, accordingly, Liberty had " 'no duty to defend any case arising from Phusion causing a person to become intoxicated.' " *Id.* Thus, the district court concluded that four out of the five underlying lawsuits fell within the liquor liability exclusion and Liberty had no duty to defend those four lawsuits. *Id.*

¶ 64    On appeal before the Seventh Circuit, Phusion argued that its additional wrongdoing of adding energy stimulants to its drinks invoked Liberty's duty to defend and relied on several " 'dram shop' " cases that interpreted similar liquor liability exclusions for support. *Id.* at 1178. The Seventh Circuit, however, did not find the "dram shop" cases persuasive, as Phusion did not face dram shop exposure and those cases involved "a separate negligent action performed by an agent of the insured *after* the furnishing of alcohol." (Emphasis in original.) *Id.* at 1179. The court noted that Phusion's act of adding stimulants to Four Loko "occurred before the product was ever consumed." *Id.*

¶ 65 Similar to its argument in the present case, Phusion argued in *Netherlands* that "the underlying complaints are 'stimulant liability cases,' not liquor liability cases." *Id.* The Seventh Circuit was not persuaded by this argument and held:

> "The presence of energy stimulants in an alcoholic drink has no legal effect on the applicability of a liquor liability exclusion. The supply of alcohol, regardless of what it is mixed with, is the relevant factor to determine whether an insured caused or contributed to the intoxication of any person. While Phusion's choice of premixing energy stimulants and alcohol to make its Four Loko product might not have been a very good one, it does not amount to tortious conduct that is divorced from the serving of alcohol." *Id.* at 1180.

¶ 66 Relying on *Northbrook*, the Seventh Circuit "reject[ed] Phusion's efforts to disguise the role that intoxication allegedly played in the underlying cases." *Id.* at 1178. The Seventh Circuit explained that in *Northbrook*, the Illinois Supreme Court "emphasized that for the automobile exclusion to not apply, and the insured to be within policy coverage, the underlying complaint must allege facts that are 'wholly independent' from the event that led to the injury." *Id.* (quoting *Northbrook*, 194 Ill. 2d at 99). In the *Northbrook* case, the allegations of inadequate planning, inadequate inspection, and failure to warn were " 'nothing more than rephrasings of the fact' that students' injuries arose from the operation of a motor vehicle." *Id.* (citing *Northbrook*, 194 Ill. 2d at 99). The *Netherlands* court, however, noted that "[t]he Illinois Supreme Court has never considered the applicability or scope of a liquor liability exclusion as applied to a liquor manufacturer," but believed that our supreme court "would likely extend the reasoning of *Northbrook* to this issue and would reject Phusion's efforts to disguise the role that intoxication allegedly played in the underlying cases." *Id.*

¶ 67 The Seventh Circuit further found the case of *Colony Insurance Co. v. Events Plus, Inc.*, 585 F. Supp. 2d 1148 (D. Ariz. 2008), to be instructive. *Netherlands Insurance Co.*, 737 F.3d at 1179. In *Colony*, the court found that an insurer did not have a duty to defend against a negligence action in which the insured hosted an event where Red Bull and vodka cocktails were served. *Colony Insurance Co.*, 585 F. Supp. 2d at 1150. The underlying complaint in *Colony* (initiated by the " 'Targosz Defendants' ") alleged that "after becoming intoxicated, one Tyler Fahlman ('Mr. Fahlman'), caused a motor vehicle accident in which Officer Targosz was killed." *Id.* Mr. Fahlman was served numerous cocktails at the event despite being under Arizona's legal drinking age of 21. *Id.* The insurer initiated the declaratory relief action and the parties disputed whether the insurance policy's liquor liability exclusion barred coverage of the claims raised in the underlying complaint. *Id.*

¶ 68 The insurer failed to file any answer or pleading in the matter; thus, only the Targosz defendants and the insured filed cross-motions for summary judgment. *Id.* The parties disputed the applicability of the liquor liability exclusion to the claims raised in the underlying complaint. The Targosz defendants argued that some of their claims fell outside the limits of the liquor liability exclusion to the extent that they alleged the insurer " 'failed to check for intoxicated persons' and 'failed to follow up and take effective action concerning suspected irresponsible or criminal behavior.' " *Id.* at 1152. The insurer, however, maintained that the allegations in the underlying complaint fell within the liquor liability exclusion because they were " 'fundamentally premised upon the injuries inflicted by Mr. Fahlman after he became intoxicated' and that 'there are no allegations of any injuries separate from those caused by Mr. Falhman in his drunken collision with Officer Targosz.' " *Id.* at 1151.

¶ 69    In considering the liquor liability exclusion, which was "verbatim to the language used in Phusion's policies" (*Netherlands Insurance Co.*, 737 F.3d at 1179), the district court found that the allegations of secondary negligence were "inextricably intertwined" with the claims that fell within the liquor liability exclusion. *Colony Insurance Co.*, 585 F. Supp. 2d at 1155. The *Colony* court explained that the underlying complaint "does not contain a single allegation of tortious conduct that is divorced from the serving of alcohol, and the Complaint does not assert any claim for damages independent of the injuries caused by Mr. Fahlman in his intoxicated state." *Id.* According to the *Colony* court, "[t]o conclude otherwise would only allow the parties to render such exclusions essentially meaningless through artful pleadings and would allow them to circumvent the terms and intent of the policy and its exclusions." *Id.*

¶ 70    The Seventh Circuit in *Netherlands* ultimately held that the insurer had no duty to defend Phusion in the four underlying lawsuits as they alleged bodily injury caused by intoxication and, thus, fell within the liquor liability exclusion. *Netherlands Insurance Co.*, 737 F.3d at 1180.

¶ 71    On appeal before this court, Phusion contends the *Netherlands* decision was incorrect and, therefore, should not be relied upon by this court for numerous reasons. First, Phusion maintains that the Seventh Circuit "erroneously equated manufacturing alcoholic beverages with furnishing them to consumers as taverns do." Our reading of *Netherlands* does not support such an assertion. Although the Seventh Circuit utilized the word "furnish," the court did not use the word as a term of art as it has been used in dramshop cases. See *Charles v. Seigfried*, 165 Ill. 2d 482, 486 (1995). Instead, the Seventh Circuit acknowledged that the issue was whether Phusion's products caused someone to be intoxicated, leading to personal injury, not whether Phusion "furnished" alcohol. *Netherlands*, 737 F.3d at 1177. After determining the liquor liability exclusion applied to Phusion, the Seventh Circuit merely used the word "furnish" by its general meaning, to provide or supply, in its conclusion. See *id.* at 1180 ("In each of the four underlying complaints, none of the claims against Phusion are distinct from Phusion's act of furnishing alcohol.").

¶ 72    Second, Phusion contends the Seventh Circuit did not apply the "sole and proximate cause rule." We disagree. The Seventh Circuit specifically considered Phusion's argument on this point and rejected it. See *id.* at 1179 ("The thrust of Phusion's argument is that its choice to add stimulants to its Four Loko product is an additional wrongdoing that amounts to a separate allegation outside of the Liquor Liability Exclusion, and is actually within the coverage of Liberty's insurance policies. *** We agree with Liberty."). Moreover, before the Seventh Circuit could have applied this rule, the underlying lawsuits must have alleged another proximate cause of the injuries. In examining the underlying lawsuits, the Seventh Circuit determined that Phusion's "secondary negligence claims *** are nothing more than rephrasings, or artful pleadings that are not wholly independent from Phusion's furnishing of alcohol." *Id.* at 1180.

¶ 73    Third, Phusion contends that the Seventh Circuit incorrectly determined that the addition of stimulants to Four Loko was irrelevant because they were intertwined with the alcohol. *Id.* The Seventh Court specifically stated:

> "Additionally, because of the very nature of the Four Loko product, the stimulants and alcohol cannot be separated. The presence of energy stimulants in an alcoholic drink has no legal effect on the applicability of a liquor liability exclusion. The supply of alcohol, regardless of what it is mixed with, is the relevant factor to determine whether

- 15 -

an insured caused or contributed to the intoxication of any person. While Phusion's choice of premixing energy stimulants and alcohol to make its Four Loko product might not have been a very good one, it does not amount to tortious conduct that is divorced from the serving of alcohol." *Id.*

We agree with the Seventh Circuit; the addition of caffeine, guarana, and taurine to an alcoholic beverage does not have a legal effect on the applicability of the liquor liability exclusion.

¶ 74 Finally, Phusion asserts the Seventh Circuit improperly distinguished the cases it relied upon, namely the dramshop cases and our supreme court's decision in *Northbrook*. In its brief on appeal before this court, Phusion cites to the same cases it did before the Seventh Circuit. See *Beukema v. Yomac, Inc.*, 284 Ill. App. 3d 790, 791 (1996); *Penn-America Insurance Co. v. Peccadillos, Inc.*, 27 A.3d 259 (Pa. Super. Ct. 2011) (*en banc*); and *Dennis v. Finish Line, Inc.*, 636 So. 2d 944 (La. Ct. App. 1994). We, too, find the reasoning of these cases to be inapplicable to whether Selective has a duty to defend Phusion in the underlying lawsuits. As previously discussed, the language of the liquor liability exclusion is unambiguous. According to the plain language of the exclusion, it applies to those in the business of manufacturing alcoholic beverages. Phusion admits it is such a manufacturer. We further disagree with Phusion that the Seventh Circuit improperly distinguished *Northbrook*. As we have already discussed at length, *Northbrook* held that for an exclusion to not apply, the underlying complaint must allege facts that are independent from the event that lead to the injury. *Northbrook*, 194 Ill. 2d at 99. The Seventh Circuit stated the same. *Netherlands Insurance Co.*, 737 F.3d at 1178.

¶ 75 What is truly at issue in this case is whether the underlying lawsuits alleged facts that fell within, or potentially within, the policy's insurance coverage. See *Pekin Insurance Co.*, 237 Ill. 2d at 455. Turning to the allegations of the underlying lawsuits, each stated their injuries were caused by individuals who became intoxicated after consuming Four Loko. The underlying complaints further alleged that Four Loko was a 23.5 ounce beverage that was contained 12% alcohol, along with the stimulants caffeine, guarana, taurine. According to these complaints, one Four Loko beverage contained the alcohol equivalent of five to six beers. Although most of the complaints alleged that the stimulants added to Four Loko masked or added an additional element to the consumer's intoxication, each underlying complaint alleged that Four Loko was an alcoholic beverage that caused or contributed to the consumer's intoxication. None of the underlying lawsuits alleged injuries that were independent from the intoxication caused or contributed to by the consumption of Four Loko.

¶ 76 Based on the claims alleged in the underlying lawsuits, Selective has no duty to defend Phusion. Each underlying lawsuit alleges Phusion is liable for causing or contributing to the intoxication of any person resulting in bodily injury. Phusion admits it is a manufacturer of alcoholic beverages. Accordingly, the underlying lawsuits fall squarely within the liquor liability exclusion and Selective has no duty to defend. The circuit court, therefore, properly granted Selective's motion to dismiss.

¶ 77 III. CONCLUSION

¶ 78 As stated above, the judgment of the circuit court of Cook County dismissing Phusion's declaratory judgment complaint with prejudice is affirmed.

¶ 79          Affirmed.